THIEBES-STIERLIN MUSIC COMPANY, Appellant, v. JOE WEISS, Respondent.

St. Louis Court of Appeals, October 19, 1909.

1. STATUTES: Penal Statutes Strictly Construed. A penal statute is to be strictly construed.

2. INTOXICATING LIQUORS: Musical Instruments in Dramshop: What Constitutes "Performing," Under Statute. An instrument which automatically produces music by vibration of a wire drawn over a sounding board, beating of drums, ringing of bells, and clashing of cymbals, known as a "Regina Concerto" is a musical instrument, and one that could be performed on; and winding such instrument and dropping a nickel in the slot, by means of which its machinery would be set in motion and music produced, would constitute "performing on it," under Section 3018, Revised Statutes 1899.

3. ———: ———: Certain Kinds of Instruments not Embraced Within Statute: Statute Construed. Such an appliance is not such a musical instrument as the Legislature meant to designate in Section 3018, Revised Statutes 1899. Said statute denounces the keeping in any dramshop of any musical instrument with the intention on the part of the dramshop keeper to perform

on it himself or engage some one else to do so, but it can not be construed to denounce the maintenance by a dramshop keeper of an automatic musical instrument for the entertainment of anyone who may wish to perform on it for his own amusement; the word "having" in the phrase "having the same performed on," as used in the statute, not being synonymous with "permitting," but importing the making of an arrangement to have an act or task done.

Appeal from St. Louis City Circuit Court.—*Hon. Robt. M. Foster,* Judge.

REVERSED AND REMANDED.

*Stewart, Eliot, Chaplin & Blayney* for appellant.

(1) Plaintiff had the right to maintain this action, since default had occurred in some of the payments upon the note, and since under the terms of the chattel mortgage upon such default, all of the indebtedness became due and payable at the election of the mortgagee and the mortgagee so elected, and since the chattel mortgage specifically provided that the mortgagee upon such default and election might at once take possession of said property for the purposes of making a sale of the same. Shinn on Replevin, sec. 131. (2) The contract of sale did not come within the prohibition of sec. 3018, R. S. 1899, because the "Regina Concerto" is not a musical instrument within the popular meaning and understanding of the term "musical instrument," as used in said statute. (3) Even if it be considered a musical instrument within the popular meaning and understanding of the term "musical instrument," as used in said statute, yet the contract of sale was valid, since section 3018 does not bar all musical instruments, but certain only, and the "Regina Concerto" is not one of these. (a) Courts interpreting a statute must seek the intent of the Legislature which enacted the statute, and, having discovered what was the legislative intent, interpret the statute accordingly. (b) Courts take judicial

notice of public acts whether they be found in the re-
vised statutes or session acts. Worley v. Columbia, 88
Mo. 106; Stone v. Halstead, 62 Mo. App. 136. (c) Courts
for the purpose of determining the legality or meaning
of a statute, take judicial notice of the journals of the
Legislature. R. S. 1899, sec. 3091; 16 Cyc. of Law and
Procedure, 907; State v. Wray, 109 Mo. 594; State v.
Swiggart, 118 Tenn. 556; Ex parte Helton, 117 Mo.
App. 609. (d) Where the title of a statute is restricted
or limited, the body of the act cannot be broader. Cooley
Const. Lim. (7 Ed.), p. 211; Allen v. Township, 57 N.
J. L. 303; State ex rel. v. Schofield, 41 Mo. 39; State
v. Persinger, 76 Mo. 346; Wetzmann v. Railroad, 131
Mo. 617; State v. Coffee & Tea Co., 171 Mo. 634; State
v. Fulks, 207 Mo. 26; St. Louis v. Wortman, 213 Mo.
138; Lewis Sutherland Statutory Construction, sec.
120. (e) The courts cannot enlarge the scope of a title.
Cooley, Const. Lim. (7 Ed.), p. 205; St. Louis v. Wort-
man, 213 Mo. 140. (f) The title of a statute is a part
of it, and aids in, and is a guide to its right construc-
tion. Const. 1876, art. IV, sec. 28; Insurance Co. v.
Albert, 39 Mo. 181; Dart v. Bagley, 110 Mo. 42; State
ex rel. v. Fort, 210 Mo. 527; Sedalia ex rel. v. Smith, 206
Mo. 361. (g) When particular words are followed
by general words, the general words will be limited to
subjects of a kindred nature to the particular words.
State v. Bryant, 90 Mo. 534; State v. Grisham, 90 Mo.
164; State v. Duinisse, 109 Mo. 434. (4) The court,
sitting as a jury, erred in assessing the value of the
property taken, and in rendering judgment that plain-
tiff, at the election of the defendant, pay the value so
assessed. If the contract of sale was invalid, the court
will merely order the return of the property to defend-
ant and must refuse him affirmative relief or the bene-
ficial election allowed by law. Bishop on Contracts
(Ed. 1887), sec. 627; Board of Trade v. Brady, 78 Mo.
App. 585; Suits v. Taylor, 20 Mo. App. 166; Attaway
v. Bank, 93 Mo. 485.

*Charles H. Brock* for respondent.

(1) If the contract sued upon or relied upon by the plaintiff as the foundation of his right of action provides that the subject-matter thereof is to be used unlawfully, the plaintiff cannot recover. Michael v. Bacon, 49 Mo. 474; Curran v. Downs, 3 Mo. App. 468; Nelson v. Townsend, 111, S. W. 394; Roselle v. Bank, 141 Mo. 36; Kitchen v. Greenabaum, 61 Mo. 110; Parsons v. Randolph, 21 Mo. App. 353; Hall v. Corcoran, 107 Mass. 259; Amusement Co. v. Amusement Co., 192 Mo. 404; Tandy v. Com. Co., 113 Mo. App. 409; Ullman v. Fair Ass'n, 167 Mo. 273; Haggerty v. St. Louis Ice Mfg. Co., 143 Mo. 238; Howell v. Stewart, 54 Mo. 400; Tyler v. Larimore, 19 Mo. App. 445; McDermott v. Sedgwick, 140 Mo. 172; Friend et al. v. Porter, 50 Mo. App. 89; Downing v. Ringer, 7 Mo. 585. (2) At common law the maintenance of a place where intoxicating liquors are sold is illegal because said business is detrimental to the public morals. A statute granting the right to engage in such business is in derogation of the common law, and a license granted to one under such a statute conveys only a privilege to engage in the business of selling intoxicating liquors. Any conditions imposed upon the licensee by such a statute are police regulations and he cannot be permitted to carry on said business except by strictly complying with such conditions. Austin v. State, 10 Mo. 591; State ex rel. v. Hudson, 13 Mo. App. 61; State v. Bixman, 162 Mo. 1; State ex rel. v. Moore, 84 Mo. App. 11; State ex rel. v. Hudson, 78 Mo. 302; State v. Seebold, 192 Mo. 720; Barnett v. County Court, 111 Mo. App. 693; State v. Ingram, 118 Mo. App. 323. (3) For the above reasons the statutes permitting and regulating the sale of intoxicating drinks should be interpreted most favorably to the public and against the person carrying on said business under and by virtue of such permissive legislation. State ex rel. v. Higgins, 84 Mo. App. 531; State v. Clin-

ton, 67 Mo. 380; State v. Villines, 107 Mo. App. 593; Yankee v. Thompson, 51 Mo. 234; Bridge Co. v. Ring, 58 Mo. 491; Meade v. Stratton, 87 N. Y. 493; State ex rel. Gumperts v. Higgins, 84 Mo. App. 531. (4) The court, in constructing a statute, will so interpret it as to conform with the intent of the Legislature, and it must be given a reasonable construction, keeping in view the purposes of the Legislature in enacting the statute as well as the circumstances surrounding its enactment. State ex rel. Sikes v. Williams (Mo.), 121 S. W. 64; Glaser v. Rothschild, 221 Mo. 180, 120 S. W. 1; Crouse v. Greenfelder, 120 S. W. 666; Ewing v. Vernon County, 116 S. W. 518; City of Lexington v. Bank, 108 S. W. 1095; State ex rel. Eaton v. Gmelich, 106 S. W. 618; State ex rel. v. Harter, 188 Mo. 516; Eubanks v. State, 5 Mo. 450; State v. Williams, 35 Mo. App. 541; Shropshire v. Glascock, 4 Mo. 536; Boynton v. Curle, 4 Mo. 599. (5) The law is well settled that a statute may be enlarged or restricted in its meaning to conform to the intent of the lawmakers when manifested by the aid of sound principles of interpretation. Glaser v. Rothschild, 221 Mo. 180, 120 S. W. 1; State ex rel. v. Field, 112 Mo. 554; Cole v. Skrainka, 105 Mo. 303; Perry v. Strawbridge, 108 S. W. 641. (6) That which is within the meaning of a statute is as much a part of it as if it were written therein. State v. Ferry Co. (Mo.), 106 S. W. 1005; State v. Reynolds (Mo.), 107 S. W. 487. (7) The rule "*ejusdem generis*" is by no means of universal application and its use is to carry out, not to defeat, the legislative intent. Where it can be seen that the general word or words were inserted to give coloring to the particular word or words, and where to carry out the purpose of the statute, the general word or words are to govern, it is a mistake to allow the "*ejusdem generis*" rule to pervert the construction. State v. Broderick, 7 Mo. App. 19; St. Louis v. Herthel, 88 Mo. 128; Ruckert v. Railroad, 163 Mo. 260; St. Joseph v. Elliott, 47 Mo. App. 418; State v. Rosenblatt, 185 Mo. 114; Lex-

ington v. Bank, 108 S. W. 1095; McFarland v. Railroad, 94 Mo. App. 342; Bank v. Haywood, 62 Mo. App. 550; Sedalia v. Smith (Mo.), 104 S. W. 21; Potter on Statutes and Constitutions, p. 48; State v. Corkins, 123 Mo. 56; State v. Harter, 188 Mo. 516; State v. Villines, 107 Mo. App. 593; State v. Williams, 35 Mo. App. 541; Shropshire v. Glascock, 4 Mo. 536; Boynton v. Curle, 4 Mo. 599; Eubanks v. State, 5 Mo. 450. (8) That great public mischief or inconvenience would result from a construction contended for may be taken into consideration in arriving at the meaning of the statute. Steppacher v. McClure, 75 Mo. App. 135; State v. Garrett, 76 Mo. App. 295; Kane v. Railroad, 112 Mo. 34; Bowers v. Smith, 111 Mo. 45; Chouteau v. Railroad, 122 Mo. 375; State v. Slover, 126 Mo. 652; Hilgert v. Pav. Co., 107 Mo. App. 385. (9) The rule of strict construction pertaining to penal laws, like all other rules of construction, must yield to the cardinal principle of all construction, which is that the intent of the lawmakers, when ascertained, must be carried into effect by the courts, if not prohibited by constitutional limitations. Riggs v. Railroad, 120 Mo. App. 335; State v. Woodward, 182 Mo. 391. (10) A leading maxim in the interpretation of statutes is to reject an interpretation which conflicts with the views of the Legislature apparent in the enactment and leads to such consequences as it would be disrespectful to the Legislature to suppose were designed. Connor v. Railroad, 59 Mo. 285; Heman v. McNamara, 77 Mo. App. 1; Bank v. Graham, 147 Mo. 250; State v. Bixman, 162 Mo. 1; State v. St. Louis, 174 Mo. 125; City of Louisiana v. Anderson, 100 Mo. App. 341; Westerman v. Knights of Pythias, 196 Mo. 670. (11) The language of the title is not conclusive of the intent of the lawmakers. That must be determined from the entire act and the surrounding facts and circumstances. The controlling thing, notwithstanding restrictions apparent in the title of the act, is the general purpose of the law. State v.

Cantwell, 179 Mo. 245; State v. Saline County, 51 Mo. 350; State ex rel. v. Ashbrook, 154 Mo. 375; Black on Interpretation of Laws, p. 174; State v. Blackstone, 115 Mo. 424.

GOODE, J.—On February 23, 1905, plaintiff, a corporation, sold to defendant an instrument or machine known as the Regina Concerto. The purchase price was seven hundred and fifty dollars of which defendant paid two hundred and fifty dollars in cash and gave his note for five hundred dollars, payable in installments thereafter, which note he secured by a chattel mortgage on the instrument. He afterwards defaulted in paying the installments of his note and the present action in replevin was instituted to recover possession of the instrument under the terms of the chattel mortgage. The cause was submitted to the court on stipulated facts, and we will cull from the stipulation such facts as we deem material to the decision. The defense to the action rests on the notion that the chattel mortgage executed by defendant to plaintiff was void and gave no security, because the instrument was purchased by defendant to be used in violation of section 3018 of the Statutes (R. S. 1899) of which unlawful purpose plaintiff had knowledge when the sale was made and the mortgage executed. Instead of quoting the section as printed in the statutes, we will copy the original Act, including the title:

"An act to prevent any dramshop keeper from keeping or permitting to be kept in or about his dramshop certain musical instruments, any billiard, pool or other gaming table, bowling or ten-pin alley, cards, dice, or other device for gaming or amusement.

Section 1. Dramshops not to keep gaming tables, etc.—penalty.

Be It Enacted by the General Assembly of the State of Missouri, as follows:

(Section 1.)   A dramshop keeper shall not keep, exhibit, use or suffer to be kept, exhibited or used, in his dramshop any piano, organ or other musical instrument whatever, for the purpose of performing upon or having the same performed upon in such dramshop, nor shall he permit any sparring, boxing, wrestling or other exhibition or contest or cock fight in his dramshop; and it shall be unlawful for any dramshop keeper to set up, keep, use or permit to be kept or used in or about the premises of his dramshop by any other person, or run or to be run in connection with such dramshop, in any manner or form whatever, any billiard table, pool table or other gaming table, bowling or ten-pin alley, cards, dice or other device for gaming or playing any game of chance; and the keeper of such dramshop shall not permit any person in or about his dramshop to play upon any such table or alley, or with cards, dice or any gaming device of any kind.   Every person violating the provisions of this act shall be guilty of a misdemeanor, and, upon conviction, shall be punished by a fine not less than ten nor more than fifty dollars, and in addition to such fine, shall forfeit his license to keep a dramshop for the term of two years next thereafter.

"Approved June 17, 1889."

Plaintiff admits knowing the appliance was purchased to be used in a saloon defendant kept in the city of St. Louis, but contends the statute, when properly construed in connection with the title of the original act, refers only to pianos, organs or other instruments like them; that these words in the act "or other musical instrument whatever," must be construed according to the doctrine *ejusdem generis* and held to include only musical instruments similar to pianos and organs, and the Regina Concerto is not a musical instrument within the statutory meaning of those words. It is agreed an organ produces music when air is pumped into an air chest; that it causes certain valves to open

through which air from the chest enters and sets in motion a reed; that the valve is opened by a person striking a key as he sits before the instrument and pumps air by moving the pedals. Pianos are agreed to be instruments wherefrom music is produced by the vibration of wire strings stretched over a sounding board, they being caused to vibrate by a person striking a key on the keyboard and causing a hammer to strike a string. The Regina Concerto is built in the shape of a cabinet and produces music in several ways, *i. e.*, by the vibration of a wire drawn over a sounding board, beating of drums, ringing of bells and clashing of cymbals. It works automatically and is so constructed that it is impossible for any one to play on it. The music is produced by power furnished by a quadruple spring motor contained in the cabinet, which is wound by a crank on the outside of the cabinet. When the motor is wound up, if a coin is dropped into a slot, music will be produced. Ten steel disks are in a chamber at the bottom of the appliance, each 32 inches in diameter and one-eighth of an inch thick. On the reverse side of the disks are innumerable projections like those on a cylinder in a music box. When the disk revolves the projections catch star wheels running across the cabinet and cause these wheels to revolve and touch the end of a hammer, whereupon the hammer strikes wires drawn over a sounding board. The drums, bells and cymbals may all be set playing at the same time. It is agreed "piano" is a generic word covering all instruments where a player strikes a key, thereby causing a hammer to strike a wire stretched over a sounding board, and the term "organ" means an instrument where a player pumps air into an air chest and by touching a key causes a reed to vibrate; that in the musical world the Regina Concerto is regarded as a machine and not as a musical instrument. We will add to the above description of the Regina Concerto, that a picture in the record shows it is in the form of an

upright cabinet which presents the appearance of a book case, except there are discs in it instead of shelves. It stands about eight feet high and is, in fact, a musical slot machine which is set playing by dropping a coin into a slot after the motor has been wound taut by turning a crank.

The statute invoked in defense is one forbidding a dramshop keeper to keep, exhibit or use, or suffer to be kept, exhibited or used "in his dramshop a piano, organ or other musical instrument whatever, for the purpose of performing upon or having the same performed upon in such dramshop." We ask whether the appliance in controversy is a musical instrument within the meaning of the statute, which, of course, being penal, is to be construed strictly. The question may be otherwise framed in these words: Did defendant violate the statute by keeping the appliance in his saloon? We consider it a musical instrument; one that could be performed on, and that winding it and dropping a coin in the slot would constitute performing on it. These things are true as they are understood in common speech; for its only purpose was to give forth musical sounds, and we reject the contention that it was not a musical instrument. We reject also the argument that performing on a musical instrument consists only in playing on it in a common way; as by fingering the keyboard of a piano or the strings of a guitar; drawing the bow of a violin across the strings, or breathing into a horn. Nevertheless we do not think the appliance was such a musical instrument as the Legislature meant to designate in the statute. It will be observed the offense of a dramshop keeper consists not only in keeping, exhibiting or using a musical instrument, or suffering it to be kept, exhibited or used, but in doing so "for the purpose of performing upon or having the same performed upon" in his dramshop. If these words are to have any force, they must be held to mean the instrument must be kept, exhibited

or used by a dramshop keeper with the intention to perform or have some one else perform on it. There is no proof or agreement defendant kept the appliance to perform on it in person. What then is the meaning of the words "or having the same performed upon in such dramshop?" Can they be construed to mean that if a dramshop keeper keeps an automatic musical instrument for the entertainment of any one who may wish to perform on it, and suffers any one to do so for his own amusement, the statute is violated? We think not, and that what is meant is keeping a musical instrument in a dramshop with the intention of the dramshop keeper to perform on it himself, or engage some one else to do so. The agreed statement of facts only says plaintiff knew at the time the note and chattel mortgage were given, defendant was conducting a dramshop and the Regina Concerto was bought to be placed therein, and that part of the money paid on the note had been dropped into the instrument in the form of nickels. This admission does not go to prove defendant bought the instrument for the purpose of performing on it, or having some one perform on it in the statutory sense. The word "having" as here used is not synonymous with "permitting," but imports making an arrangement to have an act or task done. There can be no doubt about the aim of the Legislature in enacting the statute in question. It was to prevent saloons from being made attractive by strains of instrumental music which would tend to draw persons into the place and increase the use of intoxicating liquors. We take it the language employed was considered broad enough to cover such musical instruments as were customarily used in dramshops at the time the statute was enacted, and played on by the proprietor or an employee. Probably instruments like the Regina Concerto were not used in saloons, or but little used, and hence the language of the statute was not directed against them and fails to include them though the ob-

ject aimed at would be assisted if it did. Direct legislation against slot machines did not begin until later. The keeping of gaming tables and devices for gain, like faro banks, roulette and keno, was prohibited as far back as 1879, and perhaps further. [R. S. 1879, sec. 1547; R. S. 1889, sec. 3808.] But it was not until 1901 that the statute was amended so as to include slot machines adapted to gambling uses. [Sess. Acts 1901, p. 130.] By that Act section 3808, of the Statutes of 1889, was changed to read as it does in the present revision, wherein the keeping of slot machines for gambling purposes is expressly forbidden. [R. S. 1899, sec. 2194.] Our opinion is that the language employed in the present statute forbidding the keeping of musical instruments in dramshops, precludes the idea that the keeping of an instrument like the one in controversy would be an offense under the statute, and that the act was thus drawn because the use of such instruments in saloons was not at the time so general as to draw the attention of the Legislature to the evil and cause the employment of apt words to forbid the keeping of them.

We have said nothing about whether, under the doctrine of *ejusdem generis* the words "or other musical instrument whatever" following the words "a piano, organ," and read in connection with the title of the Act, which speaks of "certain musical instruments," can be held to include an instrument like the Regina Concerto. Said doctrine is applicable to cases of this character. [State v. Gilmore, 98 Mo. 205.] We think it is unnecessary to go into that phase of the case, for it is clear to our minds that on a proper construction of the language of the statute, without reference to said rule of construction, the instrument in controversy was not covered. Therefore the judgment will be reversed and the cause remanded. All concur.