WALTER ZINN, Appellant, v. CITY OF STEELVILLE, a Municipal Corporation, ALBERT KREAMALMYER, Mayor and Ex-officio Police Judge, and BART PARSONS, City Marshal.—No. 38167.—173 S. W. (2d) 398.

Court en Banc, July 6, 1943.

414

*L. H. Breuer* and *E. W. Allison* for appellant.

416

*G. C. Beckham* and *E. E. Roberts* for respondents.

HYDE, J.—This is an action to declare void an ordinance of the City of Steelville and to enjoin its enforcement. Invalidity is claimed on constitutional grounds. The court entered a decree adjudging the ordinance valid and plaintiff has appealed.

The ordinance is as follows: "Section 1. It shall be unlawful for any person, firm, co-partnership or corporation, or the agent, servant, employees, or officers of any person, firm, co-partnership, or corporation to play or permit the playing of any piano, electric piano, phonograph, coin-in-the-slot-machines, juke boxes, or any other kind of musical instrument or any other kind of entertainment on the premises whatsoever in any room or place in any building where intoxicating liquor or beer or nonintoxicating beer is sold or offered for sale.

"Section 2. It shall be unlawful for any person, firm, co-partnership, or corporation, or the agent, servant, employee or officer of any person, firm, co-partnership or corporation to dance or permit dancing on the premises, in any room or place in any building where

intoxicating liquor or beer or nonintoxicating beer is sold or offered for sale.

"Section 3. Any person, firm, or co-partnership or corporation or the agent, servant, employees or officer of any such person, firm, co-partnership, or corporation, who shall violate the provisions of this ordinance shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than three dollars nor more than one hundred dollars for each and every offense."

It is alleged that the ordinance is void (1) because in violation of that part of Section 1 of the 14th Amendment, Constitution of United States, which provides that no state shall "deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws"; (2) because it violates sections 4 and 30 of Article 2, Constitution of Missouri, which, respectively, provide "that all persons have a natural right to life, liberty and the enjoyment of the gains of their own industry", and "that no person shall be deprived of life, liberty or property without due process of law"; (3) because the ordinance is a local or special law and violates subsection 32 of section 53, Article 4, Constitution of Missouri; (4) because the ordinance is beyond "the scope of authority granted by the legislative body of said city by the statutes of Missouri"; (5) because the ordinance is not so sufficiently clear and definite "that [400] the average person may understand whether he will or will not incur a penalty under the provisions of said ordinance, for his actions and conduct"; (6) because the ordinance "unduly interferes with the liberty of citizens and persons of the city of Steelville in that it forbids acts not unlawful or wrongful per se"; and (7) because said "ordinance is unreasonable, arbitrary, discriminatory, oppressive and unequal in its application to persons and citizens."

Plaintiff brought this suit "as a resident, tax paying citizen of and as the owner and operator of a place of business within said city of Steelville for the benefit of himself as well as on behalf of and for the benefit of all other persons whose rights are similarly affected." Plaintiff owned and operated a restaurant near the court house in Steelville and sold therein 3.2% beer at retail. He had city, county and state licenses authorizing the sale at retail of 3.2% beer. Plaintiff's evidence showed there was, in his restaurant, "an automatic playing machine" that played a music record "in response to a nickel deposited in a slot and was played and used by ourselves as well as our customers"; that the machine did not belong to plaintiff, but was installed by a Mr. Denton by whom the nickels "were taken out" of the machine "at various intervals and divided" 50-50; that "some patrons danced when the machine played and some did not"; but that the machine "is turned-off and not in use because the city officers ordered it turned-off after the ordinance went into effect." Defend-

ants' answer admitted the enactment and enforcement of the ordinance and claimed it to be constitutional and valid.

General police power is given to cities of the 4th class by Sec. 7168 (R. S. 1939), Mo. R. S. A. which provides: "The mayor and board of aldermen of each city governed by this article shall have the care, management and control of the city and its finances, and shall have power to enact and ordain any and all ordinances not repugnant to the Constitution and laws of this state, and such as they shall deem expedient for the good government of the city, the preservation of peace and good order, the benefit of trade and commerce and the health of the inhabitants thereof, and such other ordinances, rules and regulations as may be deemed necessary to carry such powers into effect, and to alter, modify or repeal the same."

Sec. 4904 (R. S. 1939) Mo. R. S. A., authorizes "the board of aldermen, city council or other proper authorities of incorporated cities" to license "retailers of all intoxicating liquor, located within their limits"; and also to "make and enforce ordinances for the regulation and control of the sale of all intoxicating liquors within their limits, provide for penalties for the violation of such ordinances, where not inconsistent with the provisions of this act." Sec. 4954 (R. S. 1939) Mo. R. S. A., likewise authorizes licensing "retailers of nonintoxicating beer within their limits", and to "make and enforce ordinances for the regulation and control of the sale of nonintoxicating beer within their limits, not inconsistent with the provisions of this article, and provide penalties for the violation thereof."

Sec. 4977 (R. S. 1939), Mo. R. S. A., defines nonintoxicating beer as "any beer manufactured from pure hops or pure extract of hops, and pure barley malt or other wholesome grains or cereals, and wholesome yeast, and pure water, and free from all harmful substances, preservatives and adulterants, and having an alcoholic content of more than one-half of one per cent by volume and not exceeding 3.2 per cent by weight." Reference to section 4950 et seq. (R. S. 1939) Mo. R. S. A., discloses that the sale of 3.2% beer is hedged about by many regulations and requirements, showing that its sale is regarded as of considerable public concern.

"It has been definitely and clearly established and settled, by the decisions of this court and of the federal supreme court, that a statute or a municipal ordinance, which is fairly referable to the police power of the state or municipality, and which discloses upon its face, or which may be shown aliunde, to have been enacted for the protection, and in furtherance, of the peace, comfort, safety, health, morality, and general welfare of the inhabitants of the state or municipality, does not contravene or infringe" the 14th Amendment of the Constitution of the United States or sections 4 and 30, Article 2, Constitution of Missouri. Bellerive Inv. Co. et al. v. Kansas City et al., 321 Mo. 969, 13 S. W. (2d) 628, l. c. 634.

We think it is clear that this ordinance refers to nonintoxicating beer covered by the statutory definition; and that there can be no question about the authority of the city to regulate the sale [401] of such 3.2% beer. Regulations of the sale of intoxicating liquor may properly deny to the seller "the privilege of making his place of business attractive for the loiterer, and so, regulations, statutory and municipal, governing places where intoxicating liquors are sold, may properly prohibit the use of lounging places, chairs, seats, or stools. It is likewise proper to forbid free lunches or other attractions or amusements, such as games or music, and to prohibit any other business except the sale of cigars and tobacco to be carried on in a barroom." [30 Am. Jur. 430, Sec. 330, annotation 50 L. R. A. (N. S.) 1156; Thiebes-Stierlin Music Co. v. Weiss, 142 Mo. App. 598, 121 S. W. 1099; Laws 1889, p. 104, Sec. 6538, R. S. 1919.] It is also within the police power to regulate or prohibit the sale of nonintoxicating alcoholic beverages. "In measuring the power to prohibit traffic in nonintoxicating beverages, a distinction is to be observed between those which are nonalcoholic and those which are nonintoxicating although they contain some alcohol. . . . Regulatory or prohibitory statutes, in enumerating particular liquors or classes of liquor, often by their express terms include liquors which are nonintoxicating in fact." [30 Am. Jur. 289, Sec. 57.] The reason for this is "The former is usually a harmless article which can in no way injure the peace and morals of society, the latter is or may be harmful, in that it may stimulate the appetite for alcoholics, or may be a means of evading prohibitory laws. Accordingly, it has been held that the police power does not extend to the prohibition of the sale of harmless, nonalcoholic soft drinks, even though, under the guise of selling such drinks, some persons may attempt to sell intoxicants. [30 Am. Jur. 401, Sec. 279; see also p. 272, Sec. 32; annotations 34 L. R. A. (N. S.) 890, 26 L. R. A. (N. S.) 872, 88 A. L. R. 1094.] The United States Supreme Court has upheld statutes prohibiting the sale of nonintoxicating alcoholic beverages as a proper exercise of the police power. [Purity Extract & Tonic Co. v. Lynch, 226 U. S. 192, 33 S. Ct. 44, 57 L. Ed. 188.] We, therefore, hold that this ordinance is fairly referable to the police power, and within the statutory power to regulate and control the sale of alcoholic beverages thereunder, including 3.2% beer, granted to the City by the Legislature. We further hold that prohibitions of musical entertainment and dancing in places "where intoxicating liquor or beer or nonintoxicating beer is sold or offered for sale" are proper regulations in the exercise of the granted police power; and that classification on this basis is reasonable. This disposes of plaintiff's constitutional contentions concerning due process, equal protection of the laws, gains of own industry and special or arbitrary legislation.

Plaintiff ·further contends that ·the ordinance is invalid because it is not sufficiently "clear, certain and definite so that the average person may, upon reading it, understand whether he will incur a penalty for his action", citing City of Washington v. Washington Oil Co., 346 Mo. 1183, 145 S. W. (2d) 366; see also 37 Am. Jur. 785, Sec. 163; 43 C. J. 254, Sec. 254, p. 546, Sec. 853. It is argued that "the terms of this ordinance are not restricted to the proprietor of such a place of business or to his employees, but applies with equal force and punishment to any person, firm, copartnership or corporation, or to the agent, servant, employee or officer of any person, firm, copartnership or corporation who might play or permit the playing of the various musical instruments mentioned in Section 1 of the ordinance or who might engage in or permit any other kind of entertainment on the premises whatsoever."

While this ordinance could have been more carefully drafted, (it seems unnecessary to prohibit a corporation from dancing) it nevertheless very closely follows the wording of the ordinance in the Bellerive Inv. Co. case which was certainly intended to apply to the owners or lessors of rooms rather than to their guests or tenants. We think the only reasonable construction of this ordinance is that it applies to and regulates only the proprietors or operators of businesses engaged in the sale of intoxicating liquor or beer or nonintoxicating beer (and their agents, servants, employees or officers), because no one else could have authority to permit the playing of musical instruments or dancing on their business premises. While Section 1 contains very general language in prohibiting the playing of "any piano, electric piano, phonograph, coin-in-the-slot-machine, juke boxes, or any other kind of musical instrument *or any other kind of entertainment* we think the rule of ejusdem generis is applicable. "Where general words in a statute follow specific words, designating special things, the general words will be considered as applicable only to things of the same general character [402] as those which are specified." Puritan Pharmaceutical Co. v. Pennsylvania R. Co., 230 Mo. App. 848, 77 S. W. (2d) 508, l. c. 511; Kansas City v. J. I. Case Threshing Machine Co., 337 Mo. 913, 87 S. W. (2d) 195, l. c. 205. Leaving out the designated instruments this would read "to play or permit the playing of . . . any other kind of entertainment." This certainly indicates "any other kind of *such* entertainment" to be furnished by "playing", namely: entertainment by some kind of instrument ·for providing music. This intention further appears from the reference to dancing in Section 2, which is considered to require music or at least what is called that.

Likewise, it might be considered that the prohibitions in these sections, by their letter, are applicable to "*any room,* or place, *in any building* where intoxicating liquor or beer or nonintoxicating beer is sold or offered for sale." Of course, some buildings might be of such

size as to make unreasonable such prohibitions, if applicable to "any room or place" therein. However, the prohibitions are confined by the ordinance to *"the premises* . . . where intoxicating liquor or beer or nonintoxicating beer is sold or offered for sale." We think this must be held to mean the actual room or place (which might consist of several rooms) "where intoxicating liquor or beer or nonintoxicating beer is sold or offered for sale", and not to apply to other rooms in the same building which are no part of the business premises where such beverages are sold.

We have held that "the primary rule of construction of statutes or ordinances is to ascertain and give effect to the lawmaker's intent"; that even "strict construction 'does not mean that whenever a controversy is or can be raised of the meaning of a statute, ambiguity occurs, which immediately and inevitably determines the interpretation of the statute' "; and that the proper office of construction "is to help to solve ambiguities, not to compel an immediate surrender to them." [Meyering v. Miller, 330 Mo. 885, 51 S. W. (2d) 65.] It is also a well established rule of construction that even if there are two possible constructions of an ordinance, or statute, the one which would uphold its validity will be adopted rather than the one which would defeat it. [43 C. J. 570, Sec. 909; 37 Am. Jur. 829, Sec. 189.] We think these rules should be invoked here, particularly because we believe, from a consideration of this ordinance as a whole, that its intent and purpose is plain. That is to regulate the business of selling intoxicating liquor or beer or 3.2% beer by preventing the proprietors of such business from attracting people to them, inducing them to remain and loiter there, and thus cultivate desire for alcoholic beverages, by providing or permitting musical entertainment and dancing. We, therefore, hold that this ordinance is not void for uncertainty and indefiniteness.

Plaintiff also assigns error in admitting, over objection, evidence of the conditions and effect of the musical entertainment provided in places engaged in the sale of alcoholic beverages. For example: Earl Low, Sunday School superintendent, testified that prior to the ordinance he was "kept awake practically every night during the summer months" by jukebox noise; that it was his opinion that the jukeboxes were played as a "drawing card of beer drinkers; to induce them to come into their place of business, a loiter place, to help draw young people. Q. Then you would say it is an attractive noise to help bring people to the place? A. Absolutely, due to the fact that these machines are played so loud. If it was for the entertainment wholly, then they wouldn't have to play them so loud that you could hear them all over town. . . . I would say that the use of them there, the morals that are affected by drawing the young people, the young boys and girls, to their beer joints for the purpose of entertainment where they are taught the use of the alcoholic drink

in these beer joints, and, as a Sunday School worker, I think that is one of the most harmful things that any one community can have, in inducing these boys and girls into these beer joints, and it is brought there through the part of the music and the entertainment which is furnished there.''

Plaintiff says that such evidence was mere conclusions and ''represented the particular whims, tastes, and likes and dislikes of the particular witnesses who so testified.'' It will be noted that in the Bellerive Inv. Co. case it is held that a statute or municipal ordinance, fairly referable to the police power, is not void as against due process, etc., as claimed in that case [13 S. W. (2d) l. c. 634] and here, ''which discloses upon its face, or which may be shown, aliunde, to have been [403] enacted for the protection, and in furtherance, of the peace, comfort, safety, morality and general welfare of the inhabitants.'' This purpose of the ordinance here may not fully appear upon its face, but we think that the ordinance and the evidence, taken together, does disclose such purpose. We, therefore, rule that it was proper for defendants, in defense of the validity of the ordinance, to show by evidence the effect of the jukebox music. Moreover, in reviewing a case in equity, evidence, if any, which might be incompetent will not be considered, but decision will be made on competent evidence offered. [Marr v. Marr, 342 Mo. 656, 117 S. W. (2d) 230; Aden v. Dalton, 341 Mo. 454, 107 S. W. (2d) 1070; Snow v. Funck (Mo. Sup.), 41 S. W. (2d) 2.] Therefore, there is usually no good reason for holding rulings on evidence to be prejudicial in an equity case.

The judgment is affirmed. All concur except *Gantt, J.,* absent.