# THE STATE ex rel. WILLIAM KNESE et al. v. EDWARD R. KINSEY et al.

## In Banc, April 9, 1926.

1. **ORDINANCE: Police Regulation:, Power of City.** A city has ample power by police regulations to protect the health of its inhabitants, but a municipal regulation cannot infringe on rights guaranteed by the Constitution or statutory laws of the State. A city cannot lawfully forbid' what the General Assembly has expressly authorized. When the State has enacted a law of general character and State-wide application, a city ordinance in conflict with it is invalid.

2. **MILK: Invalid Ordinance: Violative of Statute.** An ordinance which definitely and distinctly forbids any one to deal in a product which the statute declares to be lawful, is invalid. The city of St. Louis has no authority to forbid the sale of raw milk or to refuse to milkmen permits to sell it, or require its previous pasteurization as a condition of sale, since the statute (Sec. 11985, R. S. 1919), applicable to all cities, has defined milk as the fresh, clean, lacteal secretions obtained from healthy cows, properly fed and kept, and authorized its sale, without imposing such condition.   .

3. ——: ——: **Regulation: Silent Statute.** A city has a right to make any regulation regarding the quality of milk to be sold by dairies upon which the statute is silent; but an ordinance which does not simply impose a regulation or require a quality of milk upon which the statute is silent, but makes unlawful what the general statute says is lawful, and attempts to prohibit what the statute permits, is invalid. Where the statute permits the sale of raw milk, the ordinance cannot impose a condition that unreasonably interferes with its sale; it cannot prohibit the sale of unpasteurized milk, where the evidence shows that pasteurized milk is less healthful and less wholesome than raw milk.

4. ——: **Impurity: Evidence.** The evidence in this case introduced to show that the raw milk dealt in by relators was impure, that dust and manure were present at milking time and that flies infested the cows and carried disease-bearing bacteria into the milk, reviewed, and, *Held*, insufficient to establish any such fact, and to furnish no basis for a finding that the milk dealt in by relators was unhealthy or unwholesome, and therefore the ordinance requiring the milk to be pasteurized as a condition of its sale is not a reasonable regulation, in the face of the statute permitting the sale of raw milk.

5. ———: **Pathogenic Bacteria.** The evidence conclusively showing that pasteurization alters the character of milk, and does not always destroy pathogenic bacteria; that doctors generally require raw milk for ailing babies and children; numerous mothers uniformly testified that children were not healthful when fed pasteurized milk, but were often cured of ailments when fed raw milk, and the great weight of the testimony being that raw milk as a general thing is more nutritious, easier assimilated and better food, especially for children, than pasteurized milk, there is no reasonable basis for an ordinance which makes previous pasteurization a condition for the sale of the raw milk defined by the statute.

6. ———: **Certified: Expense.** There being nothing in the record to show that it is impractical for the city to cause sufficient inspection and standardization of dairies reasonably to insure the production and distribution of wholesome milk free from dangerous bacteria, without the expense attending the sale of certified milk, the ordinance denying to the dairymen a permit to sell raw milk unless it is first certified is unreasonable.

Corpus Juris-Cyc. References: Constitutional Law, 12 C. J., Section 390, p. 887, n. 38; Section 459, p. 946, n. 26 New. Food, 26 C. J., Section 7, p. 756, n. 83, 86, 87; p. 757, n. 90, 3; Section 17, p. 762, n. 78 New. Municipal Corporations, 28 Cyc., p. 701, n. 13.

## Mandamus.

Peremptory writ awarded.

*William L. Bohnenkamp* for relators; *James T. Roberts* of counsel.

(1) The ordinance, to be of any validity, must be consistent with the general laws of the State, and must be in harmony with the legislative policy of the State as manifested by its general enactments and as commanded by the express provisions of the Constitution. Mo. Constitution, art. 9, sec. 23; Dillon on Mun. Corps. (4 Ed.) sec. 329; St. Louis v. Meyer, 185 Mo. 594; St. Louis v. Williams, 235 Mo. 503; Moberly v. Hoover, 93 Mo. App. 633; State ex rel. v. St. Louis, 117 Mo. 113; State ex rel. v. Jost, 273 Mo. 72; State v. Kessels, 120 Mo. App. 239; Ewing v. Hoblitzelle, 84 Mo. 72; St. Louis v. Dreisoerner, 243 Mo. 218; St. Louis v. Dorr, 145 Mo. 466. (2) The statutes of Missouri undertake to define

"milk." It follows that "milk" of the kind defined in the statute may be sold in the State. The ordinance undertakes to forbid the sale of "milk" as defined by the statutes and the ordinance is therefore invalid in that it is in direct conflict with the statutes. Sec. 11985, R. S. 1919; St. Louis v. Klausmeier, 213 Mo. 119. (3) The ordinance undertakes to prevent the lawful sale of milk as defined by the statutes. It prohibits the sale or possession of a lawful and necessary article of food. To that extent it abridges the privileges and immunities guaranteed to these relators by the Constitution of the United States, deprives them of their property without due process of law and denies to them the equal protection of the law. Amendment 14, sec. 1, U. S. Constitution. (4) The ordinance is class legislation in that it arbitrarily creates a class of milk known as "certified milk," and then provides that no person shall deal in milk unless it is certified or pasteurized. Hayes v. Poplar Bluff, 263 Mo. 516; St. Louis v. Atlantic Quarry Co., 244 Mo. 479; St. Louis v. Dreisoerner, 243 Mo. 217.

*George F. Haid* and *Oliver Senti* for respondents.

(1) The city, in the exercise of its police powers, may require milk dealers to take our permits. St. Louis v. Kellmann, 243 S. W. 134; Gundling v. Chicago, 177 U. S. 183; St. Louis v. Grafeman Dairy Co., 190 Mo. 504. (2) When it is considered that no article of food is more universally used by the public, and that no other article is perhaps so sensitive to atmospheric influences as milk, and that it is within the common knowledge that impure milk is a fruitful source of disease and disorders, especially among children, it needs no discussion to show that the milk business is one which particularly falls within the power of the State and its municipality to regulate. St. Louis v. Kellmann, 243 S. W. 137; St. Louis v. Grafeman Dairy Co., 190 Mo. 504. (3) There is no conflict between that portion of Sec. 11985, R. S. 1919, de-

fining milk, and the ordinance requiring milk to be pasteurized. The General Assembly, not having exercised its power to legislate upon the subject, the city, under powers conferred upon it by the Constitution, the State law, and its charter, is free to do so. St. Louis v. Ameln, 235 Mo. 669; St. Louis v. Klausmeier, 213 Mo. 119.; St. Louis v. Cafferata, 24 Mo. 94. (4) An ordinance requiring the pasteurization of milk offered for sale therein does not violate the provisions of Section 23 of Article IX of the Constitution of Missouri. Such an ordinance is in complete harmony with the laws of the State, because the Legislature has, by Section 8646, Revised Statutes 1919, conferred upon all cities and towns in this State the power to regulate, by ordinance, dairies and the sale of milk. (5) The constitutional rights of those to whom it applies are not violated by a municipal ordinance requiring milk vendors to obtain a permit, and prohibiting the sale of unpasteurized milk, unless such regulation can be shown to be arbitrarily unreasonable or oppressive. Pfeffer v. Milwaukee, 177 N. W. 850, 10 L. R. A. 131; Gundling v. Chicago, 177 U. S. 183; Jacobson v. Massachusetts, 197 U. S. 11; Cusack v. Chicago, 242 U. S. 526; Barbier v. Connolly, 113 U. S. 27. (6) That the public health necessitates the pasteurization of milk, except that which is produced under the most favorable conditions, has been recognized by the courts. People ex rel. Ogden v. McGowan, 195 N. Y. Supp. 286; Pfeffer v. Wilwaukee, 177 N. W. 850; 10 A. L. R. 131. (7) An ordinance permitting the sale, without pasteurization, of milk produced in conformity with the methods and standards of a medical association, is not a delegation of legislative authority to such association. Butterfield v. Stranahan, 192 U. S. 470; In re Bingham Drain. Dist., 266 Mo. 60.; State ex inf. v. Colbert, 273 Mo. 211. (8) An ordinance requiring the pasteurization of all except certified milk is not invalid by reason of said exception. Cusack v. Chicago, 242 U. S. 526; Jacobson v. Massachusetts, 197 U. S. 11. (9) The reasonable-

ness and necessity of a municipal regulation adopted in the interest of the public health or safety can be best determined by the municipal authorities, and the courts will not declare such regulations unreasonable unless there is a clear showing that they are arbitrary and oppressive. Gunning v. St. Louis, 235 Mo. 201; St. Louis v. Theatre Co., 202 Mo. 699.

WHITE, J.—This case was originally assigned to a judge whose long illness and subsequent death prevented its determination. Later it was assigned to me, and other matters equally pressing have prevented its consideration until now.

The relators, eleven or more in number, filed their petition in this court praying for a writ of mandamus commanding the respondents, who constitute the Board of Public Service of the City of St. Louis, to issue to relators permits to sell milk in that city. Later a dozen and a half other milk dealers filed petitions in this court asking to be made parties to the proceedings as relators.

The alternative writ was issued, and respondents filed a return, making certain allegations regarding the condition of the dairies operated by the relators. Relators joined issue in reply by a general denial. The court then appointed as commissioner Judge Conway Elder to take evidence. A great volume of evidence was taken and is submitted for our consideration. The ordinances of the city of St. Louis and other facts pertinent to the issues joined, will be considered in their order.

I. Certain sections of Ordinance No. 31856 of the city and Ordinance No. 28646 were introduced in evidence relating to the authority of the Board of Public Service to grant or refuse permits to persons to engage in the milk business. Section 21 of Ordinance No. 28646 is as follows:

"Section 21. The Board of Public Service may in its discretion refuse to grant a permit to anyone who

shall have been repeatedly convicted of violating the or-
dinances of the city of St. Louis or laws of the State of
**Valid** Missouri concerning the inspection and regula-
**Ordinance.** tion of dairies and the inspection and sale of
products, or when for any reason in the inter-
est of the health of the inhabitants of the city, it would
be inadvisable to grant a permit to such applicant, the
Board of Public Service may revoke any permit for the
same reason for which they may refuse to issue a per-
mit.''

This court in the late case of City of St. Louis v.
Kellman, 295 Mo. 71, l. c. 82, 83, held that section to be
valid and a proper exercise of police power on the part
of the city in guarding the health of its inhabitants.
[See also City of St. Louis v. Grafeman Dairy Co., 190
Mo. 492.] It may be that the discretion given the board,
in authorizing them to refuse a permit when they think
it is inadvisable to grant it, is too broad, if uncontrolled
by legislative standards, but with that feature we are
not concerned in this case.

II.   The particular regulation which the respondents
**Invalid** claim the relators refuse to comply with is
**Ordinance.** contained in Section 1449 of Ordinance No.
31856.   It is as follows:

''*Section Fourteen Hundred Forty-nine.—Milk clari-
fication and pasteurization.*—No person shall bring into
the city of St. Louis for sale, or shall, within said city,
sell or offer for sale, expose for sale, dispose of, ex-
change or deliver, or, with intent so to do as aforesaid,
have in his possession, care, custody or control within
said city, any milk, skimmed milk, cream, cottage cheese,
buttermilk, or milk prepared by fermentation or other
process, is clarified by a centrifugal clarifier, or other
efficient device, approved by the Health Commissioner,
and is pasteurized before delivery for consumption as
food, according to the. rules and regulations prescribed
in this ordinance, except 'Certified Milk.'

" 'Certified Milk' is milk produced and handled in conformity with the 'Methods and Standards for the Production and Distribution of Certified Milk,' adopted by the Association Medical Milk Commissions May one, nineteen hundred twelve, and amendments thereto, in effect at the time of production, and certified to by a milk commission constituted in compliance therewith."

That is the way the section appears in the record. It is difficult to attach a meaning to it, unless we assume that the printed copy leaves out a condition requiring clarification and pasteurization.

A great deal of evidence was taken relating to the condition of relators' dairies, but the commissioner, after a colloquy between the counsel for both sides, decided that the refusal of permits was only on the ground that relators refused to pasteurize their milk and the evidence offered was for the purpose of showing whether the section quoted above was reasonable or unreasonable.

In addition to the general powers possessed by the city, respondents refer to Section 8646, Revised Statutes 1919, which is as follows:

"*May, by ordinance, regulate sale of milk.*—All cities and towns in the State shall have power, by ordinance, to license and regulate milk dairies and the sale of milk, and provide for the inspection thereof."

The Legislature has seen fit by a general statute to classify and determine the quality of milk in different forms, by Section 11985, Revised Statutes 1919, which contains the following:

"*Standards of purity.*—For the purposes of this article the following definitions and standards of purity for dairy products are hereby established:

"1.   Milk is the fresh, clean, lacteal secretion obtained by the complete milking of one or more healthy cows, properly fed and kept, excluding that obtained within fifteen days before and ten days after calving, and contains not less than eight and one-half per cent of solids not fat, and not less than three and one-quarter per cent of milk fat."

Sections 2 and 3 define blended and skim milk.  Sections 4 and 5 are as follows:

"4.  Pasteurized milk is milk that has been heated below boiling, but sufficiently to kill most of the active organisms present, and immediately cooled to fifty degrees Fahrenheit or lower.

"5.  Sterilized milk is milk that has been heated at the temperature of boiling water or higher for a length of time sufficient to kill all organisms present."

Then follow a number of clauses defining and describing condensed milk, sweetened condensed milk, condensed skimmed milk, sweetened condensed skimmed milk, dried milk, dried skimmed milk, malted milk, buttermilk, goat's milk, cream, evaporated cream, milk fat, butter, cheese and other miscellaneous milk products.

This statute shows a very compresensive plan in defining and specifying different milk products which it may be lawful for persons to deal in.  Section 8646, quoted above, relating to cities, of course only authorized such cities to provide for inspection, licenses and regulations so as to secure conformity to the general statute.  The city may enforce such regulations as are reasonable in requiring milk dealers to comply with the law.

A city has ample power by police regulation to protect the health of its inhabitants, but a municipal police regulation cannot infringe on rights guaranteed by the Constitution or laws of the State.  A municipality cannot lawfully forbid what the Legislature has expressly authorized.  [19 R. C. L. p. 813; 28 Cyc. p. 701; St. Louis v. Dreisoerner, 243 Mo. 217.]  In the last cited case it was held, at page 223, that a city has no power by ordinance to declare that to be a nuisance which is not so in fact, or to suppress in part or *in toto* any business within its limits which is not a nuisance *per se*.  Therefore, it has no power to declare a food unwholesome which is, in fact, wholesome.  When the State has enacted a law of general character and of State-wide application, a city ordinance in conflict with the law is invalid.  [In re East

Bottoms Drain. Dist., 305 Mo. 1. c. 587; City of Moberly v. Hoover, 93 Mo. App. 663.]

In the case of St. Louis v. Liessing, 190 Mo. 464, this court had under consideration the milk ordinance of the city. GANTT, J., speaking for the court in a well considered opinion, says, 1. c. 481: "When the courts have come to deal with such municipal regulation they have announced the rule that if the article is universally conceded to be so wholesome and innocuous that the court may take judicial notice of it, the Legislature under the Constitution has no right to absolutely prohibit it, but if there is a dispute as to the fact of its unwholesomeness for food or drink then the Legislature can either regulate or prohibit it." Here clause 1 of the statute of Section 11985 defines milk. It is required to be fresh, clean and come from healthy cows, properly fed and kept. It is not denied that the product so produced and kept is wholesome.

Clause 4 described pasteurized milk as milk heated below the boiling point sufficient to kill the most active organisms present. It is apparent that the *statute* has made several classes of milk products, of which raw milk is one and pasteurized milk another. The ordinance under consideration forbids anyone to deal in raw milk, a product which the Legislature authorizes as a lawful product and which admittedly is healthful and harmless. It cannot be contended that pasteurized milk is the milk described in clause 1 of the section, because it is subjected to a process which gives it a different character. Therefore, under the rule of law as stated above, on the face of the ordinance and the statutes, the city had no authority to forbid the dealing in raw milk and could not lawfully refuse permits to milkmen to sell it. If there was nothing before us but the statute and the ordinance, we would have to hold that the ordinance as enforced was denying a constitutional right. Section 4, Article II, of the Constitution, provides that all persons have a natural right to life, liberty and the enjoyment of the gains of

their industry.  Here is a lawful product, made so by the statute of the State, and the ordinance purports to forbid a citizen his constitutional right to deal in that lawful and harmless product.  This does not mean that the city may not make regulations which the statute does not impose, conditions which insure the purity of the product.  The city may require standards of *quality* in the milk dealt in, where the statute makes none.  One may violate an ordinance without violating a statute. But the ordinance here is not limited to those regulations. It definitely and distinctly forbids anyone to deal in a product which the statute declares to be lawful.

III.   In the case of City of St. Louis v. Klausmeier, 213 Mo. 119, this court had under consideration the statute and the ordinances of the city of St. Louis relating to milk.  It was held that the city had a right to make any regulation regarding the quality of milk products upon which the statute was silent. The ordinance required a certain per cent of ash in whole milk and of butter fat in skimmed milk.   There was no requirement on that subject in the statute; it was held that those requirements of the ordinance were lawful because not in conflict with the statute.  But it was further held that where the ordinance required a per cent of solids in skimmed milk greater than that required by statute, there was a clear conflict, for the ordinance denounced that as a crime which the statute authorized to be done and it was therefore invalid.

Silent Statute.

The respondents cite that case in support of their position. The ordinance here does not simply impose a regulation, nor does it require a quality in the milk upon which the statute is silent.  It simply makes unlawful what the statute says is lawful.  It attempts to prohibit a business which the statute permits.

This court said in the case of St. Louis v. Meyer, 185 Mo. l. c. 595, ''The municipal corporation is powerless, by definition or otherwise, to embrace in an ordi-

. State ex rel. Knese v. Kinsey.

nance a class of persons as peddlers, and subject them to penalties for the violation of this ordinance, who by a general law of the State are within the exception of the terms of the statute defining the class who are in fact peddlers.'' It is further said in that case, l. c. 594, that municipal laws must not be repugnant to the legislative policy of the State. The legislative policy of the State is shown to favor raw milk as a lawful product.

The court said in the case of St. Louis v. Williams, 235 Mo. l. c. 508, ''except in matters of purely local and municipal concern the regulation of which has been committed to the municipality, the ordinances of the city of St. Louis, in instances in which they are repugnant to the general laws of the State, must yield.''

IV.   It might be shown that under conditions existing in St. Louis raw milk cannot be safely used; that to allow dairymen to sell it and deal in it is likely to be injurious to the health of the inhabitants of **Evidence:** the city, and therefore the regulation requiring **Healthful** **Raw Milk.** milk to be pasteurized is a reasonable regulation. Without conceding the soundness of that proposition, in order to have any substantial basis, it must be supported by facts.

Respondents introduce a quantity of evidence relating to the condition of the dairies of relators: to show that dust sifts through from the loft where the feed is kept, down into stalls where the cows are milked and that pathogenic bacteria (disease-bearing bacteria) are carried in dust; that manure accumulated in the lots to which the cows had access and it sometimes got on the cows; that flies were seen in the dairies, and that flies are known to carry tubercular and typhoid bacteria when they have access to substances which contain it.   The *non sequitur* of these inferences appears in what is stated. It was not shown that dust sifts through the floors except when someone was disturbing the hay or feed, which did not happen at milk time.   It was denied that any dust,

or that any manure from the cows, got in the milk. It was not shown that any of the flies seen about the dairy ever got into the milk. There was evidence to show that chickens and geese were about the dairy farm, but there was no evidence that they carried bacteria or that they were about the stalls when the cows were milked. There was more evidence of like character and inconclusiveness.

Court records were introduced to prove that several of the relators had been convicted of violating ordinances relating to milk, but all of the provisions of the ordinances which they were charged with violating relate to failure to obtain permits, improper marking or labeling the grades of their products, failure to keep the milk up to the standard of quality and violation of other regulations. No record was produced where one of them was ever found guilty of selling milk that was not pure and free from pathogenic germs.

It was shown that a number of cows of the dairymen were condemned as tubercular, but in no case was their milk used after that fact was ascertained; they were taken away. There was no attempt to show that any disease of any kind was caused by the milk which any of the relators dealt in.

It may be said in this connection that the facts regarding the alleged unsanitary condition of the dairies was stoutly disputed by the relators and they offered evidence to show that their dairies were kept clean and in sanitary condition all the time, and in a number of instances the inspectors of the city had recommended that they receive permits. Further, the evidence offered by the city in that respect was that of veterinaries who inspected the dairies and the alleged bad conditions only applied to a few of the dairies. A majority of them were kept in good condition, and as to the few said to be badly kept the evidence was disputed. So there was no evidence upon which a finding could be based to the effect that the product in which the relators dealt, raw milk,

under the conditions prevailing in St. Louis, was any less wholesome and healthful than elsewhere.

However, the board did not refuse permits on account of any failure of the relators to comply with formal conditions in making their application, nor on account of any unsanitary conditions about their dairies or any inferiority in their product, either as to quality or healthfulness. Nor were the permits refused because of any violation of law. The refusal is based solely on the refusal of relators to pasteurize their milk. That is a failure to comply, not with the regulation of the board, but with an ordinance of the city. Assuming that the city had authority to pass such an ordinance, although contrary to the statute, it could not do so if the ordinance was unreasonable or unless the conditions in the city were such that raw milk could not be sold *at all* without danger to the health of the inhabitants.

V. A great volume of evidence was offered regarding the relative qualities of raw milk and pasteurized milk. A large number of practicing physicians, chemists, bacteriologists and users of milk were sworn. The evidence conclusively shows that pasteurization altered the character of the milk and the testimony of far the greater number of physicians and bacteriologists who testified, was that pasteurization impairs its quality; that it destroys some of the vitamens in the milk and impairs others; that it destroys the lactic acid which causes milk to sour, that souring is a process of self-preservation, and lactic acid is an important element in counteracting pernicious bacteria; that pasteurization disintegrates the salts, such as calcium, iron and phosphates, causes them to lose their organic quality and makes them more difficult, if not impossible, to assimilate; that pasteurization caused constipation and indigestion, particularly among babies and children; that it breaks down the enzymes, though other physicians said there was sufficient of that element in the digestive organisms of persons who drink

milk.   It was shown that doctors *generally* require raw milk for ailing babies and children; that children who could not flourish on pasteurized milk usually improved in health and flourished on raw milk.

There was other evidence to show that one reason for the satisfactory healthfulness of raw milk is that it increases the vitality and resistance of a child because it is easier to assimilate; that the destruction of pathogenic germs by pasteurization was more than counterbalanced by the superior nourishing quality of raw milk.   On the other hand a few physicians of eminence testified that the digestibility of milk was improved by boiling.

The evidence was also conflicting as to whether pasteurization, by which milk is raised to sixty degrees Centigrade, or one hundred and forty degrees Fahrenheit, and kept at that temperature for thirty minutes, impaired the vigor of pathogenic bacteria.   A good many bacteriologists testified that, while it impaired, it did not destroy them; that their destruction depended upon their vitality.   Some of them are more vigorous individuals than others and would survive more rigorous treatment.

In addition to the professional evidence offered the relators offered the testimony of a number of mothers and other raisers of children and they uniformly testified that children who were not healthful when fed on pasteurized milk, were healthful when fed raw milk, and were often cured of ailments when they took to raw milk.   The respondents made no attempt to counteract that testimony, but contended it was unimportant coming from non-professional source.   But it was the opinion of several physicians that actual experience, particularly clinical experience, was more valuable than laboratory tests in determining the effects of milk upon the system.

VI.   The ordinance provides for "certified milk," and that provision, it was explained, was put into the

ordinance because physicians demanded raw milk for their patients. It is raw milk, but the city's expert himself testified that certified milk was produced under so exacting and expensive conditions and the cost was so high, that it could not be produced for commercial purposes. There was no demand for it except for clinical purposes. Respondent does not claim that it is practical to require it of milk dealers. ·

**Certified Milk.**

From the above considerations we reach these conclusions.

1. Raw milk is healthful, nutritious food, particularly for children, and this is not disputed.

2. From the great weight of the evidence it is plain that raw milk as a *general thing* is more nutritious, easier assimilated and better food, especially for children, than pasteurized milk, though it is probable that some individuals may thrive better on pasteurized and boiled milk than on raw milk.

3. There is nothing in the record to show that it is impractical for the city to cause sufficient inspection and standardization of dairies so as to reasonably insure the production and distribution of wholesome raw milk free from dangerous bacteria, without the expense attending the production of certified milk.

Therefore no reasons appear why the relators should not be granted permits to deal in it. They have a right to deal in it under the statutes and Constitution and a denial of that right is supported by neither law nor reason.

Accordingly the peremptory writ should issue. It is so ordered. *Blair, C. J.,* and *Graves, Walker, Atwood* and *Otto, JJ.,* concur; *Ragland, J.,* concurs in the result, and in all of the opinion except Paragraph IV.