# CITY OF ST. LOUIS v. McCANN, Appellant.

### Division Two, June 26, 1900.

1. **Real Estate Agent: LICENSE.** The city of St. Louis has authority to require an occupation license tax from those persons who undertake to conduct a real estate business within the city, and to impose a fine upon such of them as conduct such a business without a license to do so.

2. ————: ————: OCCUPATION TAX: GAINS OF ONE'S INDUSTRY: CONSTITUTION. The Constitution guarantees to every one the right to "the enjoyment of the gains of his own industry," but this is not an absolute right, but is subordinate to the police powers of the State. Therefore a person who undertakes to conduct a real estate business in St. Louis must be held to do so subject to the power of the city to require him to pay a license tax for the privilege of carrying on such business, and in such case it is immaterial that the tax is against the occupation and not against property.

Appeal from St. Louis Court of Criminal Correction.—*Hon. David Murphy*, Judge.

AFFIRMED.

*John J. McCann per se.*

(1) There never was moral merit in actions of this sort at any place or in any period of the world. There is no legal merit for such in this age and State. The prosecution herein is grossly lawless, predatory and destructive of the natural right of defendant given him by God, and for the conservation and security of which to him as to the like right of all persons in the State, government in the State was organized. It is time, at this stage of enlightenment and civilization and in this free republic, either that methods for raising revenue typified by the ordinance declared upon

herein cease, or that government itself shall perish. The action should be summarily dismissed. Citizens' Sav. & Loan Ass'n, v. Topeka, 87 U. S. 656; Butchers Union Co. v. Crescent City Co., 111 U. S. 757; State v. Addington, 12 Mo. App. 221; Same v. Same, 77 Mo. 110; Barbour on the Rights of Persons, secs. 3 and 102 to 105; Black. Com., Introduction, sec. 41. (2) The people of Missouri, by their Constitution, adopted in 1875, and since maintained, declared in their Bill of Rights, section 4, that all persons have a natural right to life and liberty, and that the State shall, as its principal duty, protect that right at the peril of its dissolution as a government institution; life and liberty can not be, without labor that life may be, choice that liberty may be; and herein this great mandate but voiced the natural and divine ordinations; the rights so secured are thereby placed above the rights of government itself, yet, strange to say, they are, throughout the State, with the club of the criminal arm of its institutions to aid, habitually distrained, under false pretenses, for alleged revenue purposes. Constitution, art. 2, sec. 4; St. Louis Charter, art. 3, sec. 26; R. S. 1899, secs. 7764 to 7766. (3) The early adoption by the United States and Missouri, of slave constitutions and common-law rules, was in direct denial of the earlier declaration and later Missouri doctrines; there was under the early fundaments no protection to the life or liberty of any individual in the United States or in Missouri, except such as was afforded by English law; the sole protection to them thus afforded was by the English statute, incorporated with slight verbal changes into the United States and Missouri Constitutions, that "No person should be deprived of life, liberty or property without due process of law," which left these rights at the behoof of every legislative body in the jurisdictions of England, the United States and Missouri. The early United States and Missouri courts decided accord-

ingly, whence the antique "legal precedents" contained in our published law reports, and whence the "selling" of negroes and the "licensing" of white men below the rank of the common-law "gentleman." R. S. 1825, p. 491; 1 Kent. Comm., sec. 473; Dunlops' Dig. U. S. Gen. Laws, p. 71; Wheaton v. Peters, 8 Pet. 658; Baker v. Crandall, 78 Mo. 587; 12 How. 36; 13 How. 268; Barron v. The Mayor et al., 7 Peters, 443; Mo. Con. 1825, art. 13, sec. 9; State v. Julow, 129 Mo. 174; State ex rel. Wyatt v. Ashbrook, 154 Mo. 375; Wynehamer v. People, 3 Kern, 378; Freeland v. Williams, 131 U. S. 405; Murry's Lessees v. Hoboken Co., 59; Cooley on Taxation, secs. 47 to 53 and 297 to 305; Cooley on Constitution (5 Ed.), sec. 1789 and notes; Scott v. Sanford, 60 U. S. 393; Austin v. State, 10 Mo. 591; Simmons v. State, 12 Mo. 268; Nathan v. Louisiana, 49 U. S. 73. (4) The English common law, so early incorporated into and as the supreme code of our jurisprudence, is irreconcilable with the principles of the Declaration of Independence and the Missouri 1865 and 1875 Bill of Rights. The "fundamental articles" of the "free constitution" that served as the basis of that common law, were periodical written documents, signed by the kings, setting forth, first, the kings' majesties, greatnesses and goodnesses, and usually ending with promises to refrain from the indiscriminate exercise of their royal prerogatives of killing, robbing and jailing the subjects, of whom "the greater part were at one time in a state of vassalage;" whence again the legal precedents referred to in the preceding pages; and whence the United States Constitution makers' open denial of the doctrine of the Declaration of Independence and rejection of it from the Constitution. 1 Black Comm., secs. 127, 128, 129; Magna Charta, 1 Pick. Stat. at Large, England, p. 1; Petition of Right, Sel. Chart. Eng. Con. His. Appendix; Habeas Corpus (England) Act; Bill of Rights

and Act of Settlement, 9 Pick. *supra*, 67 to 73 and 357 to 360; 1 Washburn on Real Prop., sec. 26; Table of Precedence, England, Black Com., book 2, secs. 402 to 407. (5) The decisions of the United States, Missouri and sister State courts throughout the Union, since 1865, have overthrown the proposition that life or liberty can be taken "by due process of law," except in punishment for crime, and have proposed, if not affirmed, that life and liberty and their functions are held by the people absolutely immune from forfeiture, impairment, or abridgment, openly, or by stealth, by any power, public or private, except for the violation of the life or liberty of a fellow-being. Adam Smith's Wealth of Nations, book 1, chap. 10; County of Mateo v. South. Pac. R. R., 13 Fed. Rep. 722, 741, 774, 778; Woodbridge v. troit, 8 Mich. 301; Burrows on Taxation, chap. 5; Cummings v. State, 4 Wall. 325; In re Peter Jacobs, 98 N. Y. Rep. 98 to 115; State v. Town of Readington, 36 N. J. L. 70; Cooley on Const. Lim., p. 48; State v. Beattie, 16 Mo. App. 131; State ex rel. v. Sergeant, 12 Mo. App. 228; Crow v. State, 14 Mo. 279; St. Louis v. Titz, 53 Mo. 584; State v. Berkley, 92 Mo. 41; State v. Fisher, 52 Mo. 177; Morse v. Westport, 136 Mo. 276; State ex rel. v. Miller, 100 Mo. 449; St. Louis v. Bowler, 94 Mo. 635.

*B. Schnurmacher* for respondent.

(1) The State in the absence of constitutional inhibition, has the undoubted power to tax all professions and occupations. St. Louis v. Laughlin, 49 Mo. 559; Simmons v. State, 12 Mo. 268; Cooley on Taxation, p. 570; Tiedeman's Limitations of Police Power, sec. 101. (2) This power the State may delegate to its municipalities. St. Louis v. Sternberg, 69 Mo. 289; St. Louis v. Laughlin, 49 Mo. 559; St. Louis v. Herthel, 88 Mo. 128; Union Ex. Co. v. St. Joseph,

56 Mo. 680; St. Louis v. Weitzel, 130 Mo. 619; Dillon's Mun. Corp., sec. 791; 25 Am. and Eng. Ency. "Taxation," 482.   (3)   The State has delegated its power in this respect to the city of St. Louis, by article 3, section 26, paragraph 5, of the Charter, which authorizes the mayor and municipal assembly "to license, tax and regulate undertakers, dentists, auctioneers......real estate agents."   (4)   The ordinance in question is a valid exercise by the city of St. Louis of the power thus conferred upon it.   St. Louis v. Freivogel, 95 Mo. 533; St. Louis v. Bowler, 90 Mo. 630; St. Louis v. Herthel, 88 Mo. 128; St. Louis v. Sternberg, 69 Mo. 289; St. Joseph v. Ernst, 95 Mo. 360.

BURGESS, J.—This action was begun in the city of St. Louis, August 24, 1897, by summons from the first district police court of that city.   The charge was that defendant conducted a real estate business in said city in 1896 and 1897 without having a license to so do, contrary to sections 1480, 1481 and 1482, article 8, chapter 38, entitled "Revenue," of the Revised Ordinances of said city, approved . April 7, 1893.

The sections referred to read as follows:

"Section 1480.—Every person or firm composed of one or more persons, who shall act as agent for any party in the leasing, renting or selling of house or real estate at private or public sale, or who shall receive or collect rents for another for a commission or other compensation, or who shall advertise or hang out any sign or device which shall designate him as an agent for the renting, collecting rents, leasing or selling of houses or real estate shall be considered as (a) house or real estate agent(s).

"Section 1481.—A real estate broker is one who for commission or other compensation is engaged in the selling of or negotiates sales of real estate belonging to others.

VOL. 157 mo—20

"Section 1482.—Every person or firm of one or more persons engaged in the business defined in the foregoing sections shall pay an annual license of twenty-five dollars, which shall be payable before any such person or firm shall be permitted to transact any business; and if such person or persons fail to pay said license, then he or they shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than one hundred dollars nor more than two hundred dollars."

The action was tried September 9th following, plaintiff proving that defendant conducted a real estate business in said city without having a license to do so, as alleged in the complaint. Defendant demurred to the complaint and offered evidence tending to show that the taxing of his occupation was unnecessary as a revenue measure. His demurrer was overruled, his evidence excluded, and he was fined $100. He took an appeal to the St. Louis Court of Criminal Correction, and filed his affidavit and bond therefor forthwith. In the last named court, the case came for hearing on the 21st day of the same month, and defendant failing to appear, the judgment of the police court was affirmed by default. In due time he filed in the court last named, motions for new trial and in arrest of judgment.

In the motion to set aside the default, and for a new trial, it is assigned as cause therefor that the judgment was against the evidence, and against the law and the evidence.

The motion in arrest of judgment set forth that:

1st. The ordinance upon which the charge against defendant was founded, is in violation of and contrary to section 4 of article 2 of the Bill of Rights of the State Constitution.

2d. The facts set forth in the statement of the charge against defendant, do not constitute a public offense.

3d.  The evidence given at the default trial was insuffi-
cient to sustain the judgment against him.

4th.  The court had no jurisdiction of the defendant in
the cause, and the entire proceedings therein were unconsti-
tutional, null and void.

Both motions were overruled.  Defendant appeals.

As long ago as 1848, it was held by this court in Sim-
mons v. State, 12 Mo. 268, that the State possesses the power
to tax all trades, professions and occupations.  The same
rule was announced in St. Louis v. Laughlin, 49 Mo. 559, and
in St. Louis v. Sternberg, 69 Mo. 289.  In the case last
cited it is said:  "However this may have been elsewhere
decided, the power of the State to tax all professions has
remained unquestioned in this State, since the case of State
v. Simmons, 12 Mo. 271, the principle of which was followed
and approved in the case of the City of St. Louis v. Laughlin,
49 Mo. 559.  We are not disposed to reopen the question,
especially as we think it has been settled, not only in accord-
ance with reason, but with the weight of authority."

In State v. Smithson, 106 Mo. 149, it was said:  "That
the State has the right to require a license tax on different
occupations is, we think, well settled both by State and Fed-
eral decisions."

That such power may be, and frequently is delegated by
the State to its municipalities is well settled by the following
decisions of the Supreme Court:  St. Louis v. Sternberg,
supra; St. Louis v. Laughlin, supra; St. Louis v. Herthel,
88 Mo. 128; American Union Express Co. v. St. Joseph, 66
Mo. 675; St. Louis v. Weitzel, 130 Mo. 600; Dillon on Mun.
Corp. (4 Ed.), secs. 791, 793.

By paragraph 5, section 26, article 3, of the charter of
the city of St. Louis, the power is delegated to the mayor
and municipal assembly "to license and tax real estate
agents," and the ordinances in question having been passed

in pursuance of such power, must be held to be the valid exercise of such power. [St. Louis v. Sternberg, *supra*;. St. Louis v. Herthel, *supra*; St. Joseph v. Ernst, 95 Mo. 360;. St. Louis v. Bowler, 94 Mo. 630; St. Louis v. Freivogel, 95 Mo. 533.]

But it is insisted that the ordinance is violative of section 4, of article 2, of the Bill of Rights of the State Constitution, which provides "that all constitutional government is intended to promote the general welfare of the people; that all persons have a natural right to life, liberty and the enjoyment of the gains of their own industry; that to give security to these things is the principal office of government, and that when government does not confer this security, it fails of its chief design," in that it deprives all persons who come within its provisions of the enjoyment of the gains of their own industry.

This right, however, is not an absolute right, but is subordinate to the police power of the State. In speaking of this provision in the Constitution, in the case of State ex rel. v. Beattie, 16 Mo. App. 131, it is said: "The Constitution of this State, in the Bill of Rights, provides that all persons have a natural right to life, liberty and the enjoyment of the gains of their own industry . . . . . This of course,. does not confer upon any one the absolute right to use his property as he pleases. No such right exists in a state of civil society; but on the contrary, the right of one to use his own must always be exercised in subordination to the right. of others . . . . . . The same instrument provides that, 'no person shall be deprived of life, liberty, or property, without due process of law.' Clearly, this provision was not intended to withdraw the rights of private property from the reasonable exercise of the police power by the legislative branch of the government. 'All rights are held subject to

the police power of the State.' Beer Co. v. Massachusetts, 97 U. S. 25."

The right of defendant to enjoy the gains of his own industry derived from conducting a real estate business in the city, was subordinate to the power of the city to require all persons thus engaged to pay license tax, and it makes no difference in principle that the tax was against the occupation, and not against property. It was no violation of the Constitution.

The judgment is affirmed. *Gantt, P. J.,* and *Sherwood, J.,* concur.