STATE v. A. E. LAWSON, APPELLANT.—No. 38933.—181 S. W. (2d) 508.

Division Two, June 5, 1944.

Rehearing and Motion to Transfer to Banc Denied, July 3, 1944.

*R. E. Kleinschmidt* and *Frank Dietrich* for appellant.

*Roy McKittrick*, Attorney General, and *Frank W. Hayes*, Assistant Attorney General, for respondent.

1170

ELLISON, J.—The appellant, a jewelry merchant, was convicted in the circuit court of Jefferson County of buying two watches and two finger rings from a minor, a fifteen year old boy, without the written consent of his parent, in violation of Sec. 4671.[1] The offense is a misdemeanor and ordinarily the appeal should go to a Court of Appeals, Sec. 12, Art. VI, Const. Mo. But appellant attacked the constitutionality of the statute in the trial court and does so here, thereby placing appellate jurisdiction in this Court. State v. Hershman, 346 Mo. 892, 143 S. W. (2d) 1025. Only two assignments of error are made: the first attacking the constitutionality of the statute, as just stated; and the second challenging the validity of the trial proceedings because the circuit judge refused to relinquish jurisdiction thereof after an affidavit of prejudice had been filed under Sec. 4037(4). We first take up this second assignment.

Sec. 4037 provides that when a criminal prosecution is pending in any circuit or criminal court, the regular judge "shall be deemed incompetent to hear and try said cause in either of the following cases: . . . fourth, when the defendant shall make and file an affidavit, supported by the affidavit of at least two reputable persons, not of kin to or counsel for the defendant, that the judge of the court in which said cause is pending will not afford him a fair trial." The next section, 4038, provides that whenever an application based on Sec. 4037 shall be filed, "it shall be lawful for the judge to hear and determine such application." There are further provisions in this section requiring the regular judge to disqualify himself for any of the reasons enumerated in Sec. 4037, of which he has personal knowledge; and, in event of his disqualification either on application or his own motion, authorizing the election of a special judge by written agreement between the defendant and the prosecuting attorney, with the concurrence and approval of the court (acting through the regular judge). Then Sec. 4040 provides that if in any case the regular judge shall be incompetent to sit, for any of the reasons mentioned in Sec. 4037, and no special judge has been provided, he shall call in an outside circuit or criminal judge. We shall return to a consideration of these statutes after stating what was done under them.

On April 25 the appellant filed a verified application supported by the joint affidavit of two persons, to disqualify the regular circuit judge under Sec. 4037, supra, charging he would not afford appellant a fair trial because of bias and prejudice. There is no

---

[1]All references to our Statutes are to R. S. 1939, and same section number in Mo., R. S. A. Italics in quotations are ours unless otherwise noted.

contention that the application was not in due form, *on its face*. On June 30 the judge made and entered an order setting the application and affidavit for hearing on July 9, 1942, and requiring the applicant to be present with the two affiants. On that date the defendant appeared in person; but his attorney and the two affiants did not appear. Thereupon, without hearing any testimony and without the issuance of any citation or subpoena, so far as the record shows, the court entered the following order:

"Now on this day the petition for disqualification of Judge coming on for hearing, and Defendant appearing in person and his attorney failing to appear, and Defendant and his attorney failing to comply with the Order of the Court heretofore made on June 30th, 1942, relative to producing in Court the two persons making the two supporting affidavits filed by the Defendant, so that said persons might be questioned *as to whether or not they made such affidavits, and, in fact, whether or not there are two such persons, and whether or not such persons are of good character,* as provided by Statute, they being unknown to the Court, the application for disqualification of the Judge is at this time overruled and case continued to the next regular term of this Court."

A week later, on July 15, the appellant filed a verified motion to set aside said court orders of June 30 and July 9, and to call in another judge. The motion was based on the ground that the two orders were void since the regular judge had previously lost jurisdiction of the cause on April 25 when the application to disqualify him for prejudice was filed. On that point cases were cited holding that a judge whose disqualification is thus alleged in due form has no power to pass on his own prejudice, but can only call in another judge pursuant to Sec. 4040—and the motion asserted the application was in due form.

At the next (September) term the court, acting through the regular judge, ordered that the foregoing motion be stricken from the docket. When the cause came on for trial appellant appeared in person and by counsel and entered a plea of not guilty. But he objected to a trial by the regular judge; and asked leave to refile his application and affidavit for disqualification previously filed on April 25. He further offered to prove that the two supporting affiants were qualified under Sec. 4037; that they were reputable persons; were not of kin to or counsel for the appellant; and that they and the appellant had duly made and subscribed the affidavits to the application, as shown therein. The prosecuting attorney objected on the ground that appellant and his counsel had been offered an opportunity to make that showing on July 9; and that it was now too late for the State to make an investigation as to their good repute. The objection was sustained and the trial proceeded.

The only point made in appellant's brief on this assignment is the same as that urged in his motion of July 15 below, namely: that the regular judge was bound by the application (and affidavits) for his disqualification, since he was not qualified to pass on his own prejudice and the application was in due form; in consequence of which his judicial power was limited to calling in another judge. As heretofore stated the application was in due form *on its face*. This the Attorney General concedes; and he also concedes that a judge in this state cannot pass on his own prejudice when it is thus challenged. But he contends for the State that although the application *outwardly* was in due form, nevertheless the regular judge could inquire whether the statutory requisites *underlying* the application had been met. Among these were the basic (not superficial) requirements that the application actually must be made and sworn to by the accused and supported by affidavits made by two reputable persons not of kin to or of counsel for the accused.

This contention is sound. Sec. 4038 expressly provides that it shall be lawful for the regular judge to "hear and *determine*" the application; that a special judge may be elected by written agreement of the defendant and prosecuting attorney, with the *concurrence and approval* of the court acting through the regular judge; and Sec. 4040 provides the regular *judge* (not the court) shall call in an outside judge. The statutes clearly show the hands of the regular judge are not completely tied when an application for his disqualification is filed. The court's order of July 9 expressly states that the purpose of the order of June 30 was to have the parties in court so it might be ascertained whether the two affiants did make the affidavits; whether there were such persons; and whether they were of good repute.

The question has been squarely decided in several cases. It was ruled in Ex parte Thompson v. Sanders, 334 Mo. 1100, 1105, 70 S. W. (2d) 1051, 1053, a decision en banc, quoting from Ex parte Ross, 307 Mo. 1, 4, 269 S. W. 380:

"It cannot be denied that there must be lodged somewhere the power to determine whether upon an application for a change of venue in a criminal cause all the provisions prescribed by the statute conferring the right have been complied with. It is equally indisputable that the statute contemplates that such power shall be exercised in the first instance by the trial court in which the cause is pending. Can it be that the court has only the power to decide one way? Such is the logic of petitioner's claim. But certainly the power to determine whether an application for a change of venue measures up to the requirements of the statute necessarily includes the power to hold that it does not, as well as the power to hold that it does."

The Thompson decision also cited State v. Creighton, 330 Mo. 1176, 1190, 1195(5), 52 S. W. (2d) 556, 560, 562-3 (6-10). That

case held, "the manner of *executing* the affidavit pertains to its *form*, and not to its substance." The specific point decided was that a regular judge had authority, on motion of the prosecuting attorney, to hear evidence touching the authentication of the affidavits supporting an application for the disqualification of the judge. The affidavits were fair on the face, but the testimony developed that the affiants had not appeared before the notary public who had sealed them; and for that reason they were held void. The Creighton case cites another of like tenor, State ex rel. Sawyer v. Kelly, 330 Mo. 143, 148(2), 48 S. W. (2d) 864, 866, which was based on Sec. 4019, authorizing changes of venue in certain counties because of the prejudice of the inhabitants, when the application is supported by the affidavits of five or more credible and disinterested persons residing in different neighborhoods. Held, the affidavits could not be impeached on the merits, as to the prejudice; but that the judge could inquire whether affiants were in fact credible, disinterested and residents of different neighborhoods. These decisions have been followed in principle in later cases: State v. Pyle, 343 Mo. 876, 881(3), 123 S. W. (2d) 166, 169(5); State v. Bailey, 344 Mo. 322, 328(III), 126 S. W. (2d) 224 227(4, 5); State ex rel. K. C. Pub. Serv. Co. v. Waltner, 350 Mo. 1021, 1031, 169 S. W. (2d) 697, 700(2).

Since we have ruled the trial judge had jurisdiction to inquire into the background of appellant's application and affidavits for disqualification, as regards matters pertaining to the execution thereof and the qualifications of his supporting affiants, the other contentions made under this assignment must fall. He asserts the trial judge had no right: to hail him and his affiants into court by the order of June 30; to overrule his application on July 9 when appellant's counsel and affiants failed to appear, as ordered; to strike from the docket his motion of July 15 asking that said orders be set aside; and to refuse to permit the application for disqualification to be refiled and to hear evidence thereon immediately preceding the trial, as to authenticity of the supporting affidavits and the identity and character of the affiants.

But all these contentions are based mainly, if not entirely, on the invulnerability of his application for disqualification of the judge; and we have overruled that contention. Whether the court should have ordered the issuance of a subpoena for the affiants is a question not presented by this record. With regard to the court's refusal to allow the application to be refiled and to hear evidence thereof, we need only say that in view of the recalcitrance of appellant's counsel (indicated by the record and brief) and the long pendency of the proceedings, the offer to refile the application and present evidence came too late. State v. Creighton, supra, 330 Mo. l. c. 1196(7), 52 S. W. (2d) l. c. 563 (11-13). The order of the court on July 9, overruling the application as first filed and stating the reasons why the

appearance of the affiants in court was desired, antedated the trial by ten weeks. In the meantime counsel was relying upon his motion to set aside the two previous orders, when the reason for them and the law behind them was plain.

The other assignment is that Sec. 4671 of our statutes, upon which the prosecution is founded, violates the due process sections of our State and Federal Constitutions and the following sections of the State Constitution: Sec. 4, Art. II, providing all persons have a natural right to life, liberty and the enjoyment of the gains of their own industry; Sec. 53, Art. IV, forbidding local or special laws; and Sec. 28, Art. IV, providing no bill shall contain more than one subject, which shall be clearly expressed in its title. The statute is as follows:

"Any pawnbroker, junk dealer, dealer in second-hand goods or merchant, who shall buy, receive or take any personal property, goods, wares or merchandise, other than agricultural products, of any value from any minor or have in his possession any personal property, goods, wares or merchandise, so had and obtained without the consent of such minor's parents or guardians, had in writing, shall, upon conviction, be punished by imprisonment in the county jail not less than three months nor more than five months or by fine of not less than one hundred dollars or more than five hundred dollars, or by both such fine and imprisonment."

In invoking all of the above constitutional provisions except the last, appellant argues that buying or receiving personal property from a minor, especially when it is of little value, is an act wholly devoid of criminal intent. He further asserts that under the statute as it reads, any person who *happened* to be a pawnbroker, junk dealer, second-hand dealer or merchant, would be guilty of a misdemeanor if he merely bought a newspaper or lead pencil from a boy on the street without the consent of his parent or guardian; whereas any other person could do so with impunity. But we think appellant has mistaken the meaning and intent of the statute and overlooked the constitutional sanction for it.

It is true that the acts denounced by the statute often would be entirely innocent, and might be even when done by a person designated therein. And it may be conceded, as appellant argues, that no such acts can be made criminal by statute or ordinance except where it would be in furtherance of the police power, for the protection of the public health, safety, morals and the like. But that is precisely what the statute is for. Pawnbrokers, junk dealers and second-hand dealers constitutionally may be regulated in the exercise of the police power[2]

[2]12 C. J., sec. 432, pp. 924-5, sec. 1074, p. 1273; 16 C. J. S., sec. 189, p. 560, sec. 668, p. 1418; St. Louis v. Baskowitz, 273 Mo. 543, 565(III), 201 S. W. 870, 876(4); St. Joseph v. Levin, 128 Mo. 588, 594, 31 S. W. 101, 102, 49 Am. St. Rep. 577.

And junk dealers and pawnbrokers may be prohibited from dealing with minors. 43 C. J., sec. 491, p. 390; 48 C. J., sec. 9, p. 562; 31 C. J., sec. 15, p. 994.

Appellant errs in construing the statute as singling out individual persons who buy, receive or take personal property from a minor, or who possess such property so obtained, if they merely *happen* to be engaged in any of the occupations named, and as exempting all other persons who do the same thing. The statute says "any pawnbroker, junk dealer," etc., who .does the forbidden acts shall be punished. That undoubtedly means the person must do the act *as* a pawnbroker or as another of the occupationalists specified—that is to say, the act must be done in the course of those businesses. There is nothing in the statute that would forbid a person so engaged from buying a paper from a newsboy or receiving a Christmas or birthday present from a minor, without the written consent of the parent or guardian. It is the named *businesses* which the statute regulates; and the regulation is imposed because their nature legitimately makes them subject to regulation.

The obvious intent of the statute is to cover persons engaged in occupations which include dealing in privately owned or possessed, or secondhand personal property, exclusive of agricultural products. The fact that it contains the general words "or merchant", following the enumeration of specific businesses of the kind just stated, does not militate against the construction we put on the statute. The rule "ejusdem generis" should be applied to conform to the general intent of the section, thereby restricting the application of the word "merchant" to merchants in the same class as the other businesses named. 59 C. J., sec. 581, p. 981; McClaren v. Robins & Co., 349 Mo. 653, 657(1), 162 S. W. (2d) 856, 858(1).

Appellant's final contention is that the title of the bill whereby Sec. 4671 was passed, offended against Sec. 28, Art. IV of the State Constitution, providing that no legislative bill shall contain more than one subject, which shall be clearly expressed in the title. He says the title "limits" it to pawnbrokers and junk dealers. Evidently appellant has in mind the black type catch words prefixed to the statute by the compilers of the 1939 Revision, which are; "Pawnbrokers and junk dealers not to buy or receive from minors." The Act was first passed by Laws Mo. 1903, p. 166. The catch words there added by the Secretary of State are even more fragmentary, mentioning only "Pawnbrokers, Etc." But neither of these is a part of the bill. State ex inf. Crain v. Moore, 339 Mo. 492, 495 (1), 99 S. W. (2d) 17, 19(1). The correct title of the legislative bill as presented to the General Assembly, appears in the Session Acts, supra, and it did contain the words "or merchant," as does the body of the Act. And it should be construed in the same way under the

doctrine of "ejusdem generis." 59 C. J., sec. 390, p. 810, note 31. There is no merit in this assignment.

Appellant's brief in closing says he is not waiving any of the other grounds contained in his motion for new trial, though he will not argue them. Sec. 4150 provides it shall be unnecessary for the appellant in a criminal case to make assignment of error or joinder in error on appeal; and requires the court "to render judgment upon the record before them." This has been construed to mean that in cases where the appellant has filed no brief the appellate court should look to the record proper and the assignments of error in his motion for new trial below, if there is a bill of exceptions. But in State v. Mason, 339 Mo. 874, 879, 98 S. W. (2d) 574, 577(6), it was held that where the appellant does file a brief on appeal omitting any of the assignments in his motion for new trial, the appellate courts may disregard them. However that decision was limited to appeals where assignments of error have been *expressly* withdrawn or eliminated by *implication* because they were omitted from the brief.

Yet in State v. Davit, 343 Mo. 1151, 1152(1), 125 S. W. (2d) 47, 49(1) where the appellant's brief made assignments of error which were ignored in his Points and Authorities and Argument, we held they were abandoned, citing the Mason case. It is very doubtful whether an appellant is entitled to a review of assignments merely because he *says* he is not abandoning them when *in fact* he is. But we need not decide that question here, because appellant goes on to say that his further assignments have to do with the giving and refusal of instructions and the admission and exclusion of evidence "all relat(ing) either to the lack of jurisdiction on the part of the court or the unconstitutionality of this statute." Since we have overruled his contentions on these two points we need not consider his further collateral assignments on the same issue.

Finding no error, the judgment is affirmed. All concur.