Steven W. BLOEMER, et al.,
Plaintiffs/Appellants,

v.

ART WELDING COMPANY, INC.,
et al., Defendants/Respondents,

and

Alonzo CANNON, et al.,
Plaintiffs/Appellants,

v.

ART WELDING COMPANY, INC.,
et al., Defendants/Respondents.

No. 63974, 63981.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 26, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 30, 1994.

Application to Transfer Denied
Oct. 25, 1994.

Kevin Michael Cushing, Paul C. Hetterman, St. Louis, for appellants.

Lester J. Hubble, Robbye Hill Toft, St. Louis, Michael H. James, Chesterfield, Thomas B. Tobin, Brent Winfield Baldwin, St. Louis, for respondents.

CRAHAN, Judge.

Plaintiffs Steven Bloemer and Alonzo Cannon are co-employees of Lever Brothers Company who were injured in an accident at Lever Brothers' St. Louis plant. Plaintiffs were attempting to clean a large machine called a "cyclone." The cyclone, which was designed by Lever Brothers engineers, was fabricated and installed by Defendants William R. Montgomery and Associates, Inc. ("Montgomery"), Art Welding ("Art"), and Metro Manufacturing, Inc. ("Metro"). Plaintiffs appeal the trial court's orders granting summary judgment in favor of these defendants in their separate and identical actions seeking damages based on strict liability and negligence, which have been consolidated for purposes of appeal.

Plaintiffs' claims are based exclusively on alleged defects in the design of the cyclone—*i.e.*, safety features Plaintiffs claim should have been, but were not, incorporated into the design—and failure to warn of such alleged defects. It is undisputed that Defendants fabricated and installed the cyclone precisely in accordance with the plans and specifications prepared by Plaintiffs' employer, Lever Brothers. The dispositive issue is whether Defendants' compliance with such plans and specifications may be invoked as a defense to an action based on strict liability and negligence where the alleged defects are purely matters of design or failure to warn of such defects in design. We hold that a contractor's compliance with its customer's plans and specifications is, with limited exceptions not applicable in this case, a complete defense to strict liability and negligence claims based on defective design. Accordingly, we affirm the judgment of the trial court.

On review of an appeal from entry of summary judgment, we review the record in the light most favorable to the party against whom the judgment was entered. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). The review is essentially *de novo*. We employ the same tests as should be employed by the trial court in determining the propriety of sustaining the motion. *Id.* Whether a summary judgment motion should be sustained is purely an issue of law. *Id.* Therefore, summary judgment is to be entered in favor of the moving party when the motion for summary judgment and the response thereto show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.* at 377. Rule 74.04(c).

When the moving party is "a defending party" who will not bear the burden of persuasion at trial, that party need not controvert each element of the non-movant's claim in order to establish a right to summary

judgment. *ITT*, 854 S.W.2d. at 381. "Rather, a 'defending party' may establish a right to judgment by showing (1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense." *Id.*

■ In this case, the facts are essentially undisputed. In 1983, Lever Brothers, a detergent manufacturer, undertook a project to upgrade its existing facilities in the north tower of its St. Louis plant. The project involved, among other construction services, the fabrication and installation of six new "cyclones" in the north tower. A cyclone is a three-story tall cylindrical tank which is designed to remove detergent particles from the air. The cyclone contains a fan, a separator pot and access doors.

Lever Brothers' engineering department designed the entire north tower upgrade and the cyclones were built and installed according to Lever Brothers' specifications. Lever Brothers retained Montgomery as the general contractor for the project and, pursuant to its contract, Montgomery subcontracted with Art who then subcontracted a portion of the fabrication of various components to Metro. After installation, Lever Brothers' engineering department redesigned the access doors with a quick-release latch. Originally, the access doors were designed with lug nuts to restrict the speed and angle at which the doors could be opened. Montgomery installed the quick-release handles in accordance with Lever Brothers' specifications. The completed cyclones were accepted by Lever Brothers in 1983.

After a period of operation, detergent would periodically coat the cyclone's interior, necessitating cleaning. On December 18, 1987, Plaintiffs were injured while they were attempting to clean cyclone #1 in the north tower. Cleaning was accomplished by flushing heated water along the walls of the cyclone. The heated water was inserted at the top of the cyclone and steam was inserted on the sixth floor to heat up the water and assist in the cleaning process. The water was then discharged through a port at the bottom of the cyclone.

Plaintiffs noted that no water was flowing from the port at the bottom of cyclone #1 and suspected a blockage. Plaintiffs turned the water and steam off, opened the access door on the fifth level, and attempted to dislodge the blockage with an iron rod. When this procedure proved unsuccessful, Plaintiffs went to the sixth level, hoping to dislodge the clog from there. Plaintiffs saw water seeping out around the edges of the access door on the sixth level. Plaintiff Bloemer used a metal pole to manipulate the quick-release handle of the access door. When the door opened, hot water gushed out and burned Plaintiffs.

Plaintiffs brought an action against numerous defendants in strict liability and in negligence. Plaintiffs alleged that defendants Montgomery, Art and Metro are strictly liable and negligent for (1) failing to provide the cyclone with a device to measure the fluid level; (2) failing to provide the cyclone with a safety latch door which would prevent the door from opening fully when the fluid level was above the base of the door; (3) failing to provide a sight glass or other means for viewing the interior of the cyclone to determine the fluid level; (4) failing to warn of the dangers of burns or other injuries as a result of opening the door when the fluid level was above the base of the door; and (5) failing to provide a bleeder valve at the base of the cyclone to drain fluids.

Defendants Montgomery, Art and Metro each filed motions for summary judgment supported by deposition excerpts establishing that their work in fabricating and installing the cyclones was performed strictly in accordance with the plans and specifications of Lever Brothers and that the completed assembly had been accepted by Lever Brothers. Defendants asserted that these facts were sufficient to entitle them to judgment as a matter of law in the absence of any claim that Plaintiffs' injuries were the result of any defects in the materials or workmanship they provided in fabricating, assembling

and installing the cyclones in accordance with Lever Brothers' plans and specifications. Defendants further maintained that, absent proof of some obvious danger in the design, they cannot be held responsible for the alleged defects in Lever Brothers' design and had no duty to discover or warn Plaintiffs of such alleged defects. The trial court granted summary judgment for Montgomery, Art and Metro.[1]

In their motions for summary judgment and on appeal, Defendants urge that they are entitled to invoke the "owner acceptance" and "contract specifications" doctrines recognized and applied in *Gast v. Shell Oil Company*, 819 S.W.2d 367 (Mo. banc 1991). In *Gast*, the parents of a gas station cashier filed a wrongful death action against a contractor who had converted a service bay into a cashier's room in accordance with the owner's specifications. After the construction had been completed and accepted by the owner, robbers kicked in the door and shot the cashier. The plaintiffs maintained that the contractor should be held liable for using a hollow door instead of a solid one, for installing the door so that it opened in an inward direction, and for failing to secure the deadbolt lock with longer screws and a metal reinforcing plate. 819 S.W.2d at 369.

In analyzing the issue of the contractor's duty, the Missouri Supreme Court cited a series of prior Missouri cases and the *Restatement (Second) of Torts § 385, comment d (1965)* for the proposition that a contractor cannot ordinarily be held liable for injuries occurring after the owner's acceptance of the work. 819 S.W.2d at 370. The court acknowledged that an exception to this rule had been recognized in *Begley v. Adaber Realty and Inv. Co.*, 358 S.W.2d 785, 791 (Mo.1962), with respect to defective construction, inherently dangerous to others, in a situation where the defects are known to the contractor but not detectable upon careful inspection by the owner accepting the work. However, the court held that such exception was inapplicable where the contractor performed the work in accordance with the owner's specifications, the owner had accepted the work, and there was no evidence that the owner relied on the contractor's expertise as to the proper design of the work to be performed. 819 S.W.2d at 370–71.

Plaintiffs seek to limit *Gast* to situations involving a contractor performing work on the property of another. Thus, Plaintiffs reason that the "owner acceptance" and "contract specifications" doctrines applied in *Gast* have no application to actions based on product liability, regardless of whether the product is fabricated in accordance with the customer's specifications. We disagree.

Although *Gast* did involve a situation where the contractor undertook construction on the owner's property as opposed to fabrication of a "product,"[2] § 385 of the *Restatement (Second) of Torts*, cited with approval in *Gast*, indicates that the same basic rules apply to a contractor's fabrication of a chattel in accordance with its customer's specifications. Specifically, the comments to § 385 cross reference §§ 394–398, 403 and 404 for the rules determining the liability of an independent contractor who makes a chattel for the use of others. Section 404, comment a provides:

> [O]ne who employs a contractor to make a chattel for him, like one who employs a contractor to erect a structure on his premises (as to which see § 385), usually provides not only plans but also specifications, which often state the material which must be used. Indeed, chattels are often

---

1. The trial court designated its judgment in favor of Montgomery, Art and Metro as final and certified that no just reason existed for delay, thus rendering the judgment final for purposes of appeal. Rule 74.01(b).

2. In the trial court, all parties assumed for purposes of their motions that the cyclones were "products" for purposes of the application of strict product liability. On appeal, Montgomery seeks to challenge this assumption, noting that the project essentially involved construction of a large commercial building with custom fixtures. Montgomery urges that the analysis set forth in *Chubb Group of Ins. v. C.F. Murphy & Assoc.*, 656 S.W.2d 766, 780 (Mo.App.1983) would preclude application of strict product liability as inconsistent with the consumer protection principles underlying the doctrine. We find it unnecessary to reach the merits of this contention and assume, as the parties did below, that the cyclone is a "product" or "chattel" for purposes of our analysis.

made by independent contractors from materials furnished by their employers. In such a case, the contractor is not required to sit in judgment on the plans and specifications or the materials provided by his employer. The contractor is not subject to liability if the specified design or material turns out to be insufficient to make the chattel safe for use, unless it is so obviously bad that a competent contractor would realize that there was a grave chance that his product would be dangerously unsafe.

The analysis set forth in this passage is virtually indistinguishable from that employed in *Gast* and has been applied by courts in other jurisdictions in products liability cases. *See, e.g., Moon v. Winger Boss Co. Inc.,* 205 Neb. 292, 287 N.W.2d 430, 433–34 (1980) (citing § 404, comment a); *McCabe Powers Body Co. v. Sharp,* 594 S.W.2d 592, 594–95 (Ky.1980); *Spangler v. Kranco, Inc.,* 481 F.2d 373, 375 (4th Cir.1973). Indeed, as the Sixth Circuit observed in *Garrison v. Rohm and Haas Company,* 492 F.2d 346, 351 (6th Cir.1974): "To hold [contractor] liable for defective design would amount to holding a non-designer liable for design defect. Logic forbids any such result." Likewise we hold that the contract specifications defense recognized in *Gast* applies equally to chattels custom manufactured and installed in accordance with the customer's plans and specifications.

Plaintiffs contend, however, that even if the defense is available to Defendants, they are not entitled to summary judgment because there remain genuine issues of material fact with respect to (1) whether the specifications were so obviously bad that a competent contractor would realize there was a grave chance that the product would be dangerously unsafe; and (2) whether Defendants could have incorporated the safety features Plaintiffs claim should have been included without deviating from the Lever Brothers' specifications. We disagree.

Plaintiffs concede that there is no genuine issue of fact with regard to Defendants' compliance with Lever Brothers' specifications. Under such circumstances, we believe it is incumbent upon Plaintiffs, not Defendants, to come forward with proof that would support a finding that the specifications provided were so obviously deficient that a competent contractor would have recognized the danger. We find nothing in the record which would support such a finding and much to preclude one. Defendants were not in the business of designing or manufacturing cyclones. There is no evidence either that they had any specialized knowledge of the operation or use of the cyclones or that Lever Brothers in any way relied on such knowledge. Indeed, there is no evidence that Defendants were aware of the procedures Lever Brothers contemplated for cleaning the cyclones at the time Defendants fabricated and installed them. There is no evidence that the cyclones could not be cleaned safely as designed. In fact, one of Lever Brothers' engineers testified by deposition that it was not intended that the cyclones be filled with water as part of the cleaning process. Rather, the contemplated procedure was to flush the cyclones with water and steam, with the water flowing naturally out of the bottom. In this particular case, that did not occur because a clog developed and was not detected until a substantial volume of water built up in the cyclone.

In the absence of any showing that Defendants had knowledge of the cleaning procedures contemplated by Lever Brothers and in view of Defendants' evidence that the procedures employed were never intended to permit the cyclone to fill with water, we find no evidentiary basis for a finding that the specifications provided by Lever Brothers were so deficient as to put Defendants on notice that the design should have been modified in the manner suggested by Plaintiffs. Accordingly, we find that Plaintiffs have failed to raise a genuine issue of material fact as to Defendants' entitlement to judgment based on their contract specification defense.

Plaintiffs' contention that Defendants were required to prove they could not have included the missing safety features and still have complied with Lever Brothers' specifications must also fail. A similar contention was considered and rejected in *Gast.* There the plaintiffs urged that nothing in the contract prohibited the use of longer screws or a metal plate which the plaintiffs contended

would have made the cashier's door less susceptible to a break-in. The Missouri Supreme Court held that, absent evidence that the owner was relying on the contractor's expertise as to the proper design of the modification, the issue was whether the contractor's work was contrary to the owner's specifications, not whether the steps the plaintiffs suggested would have been permissible. 819 S.W.2d at 371. Further, to impose liability for failure to suggest revisions to the customer's design necessarily presupposes a duty to evaluate the adequacy and safety of the customer's specifications. As discussed above, however, absent some glaring deficiency in the specifications provided, the contractor owes no such duty. *See id.* In the absence of any duty to evaluate the adequacy or safety of customer-provided designs, it follows that Defendants likewise had no duty to warn of the alleged defects.[3]

For the foregoing reasons, we hold that the record submitted to the trial court was sufficient to establish Defendants' proffered contract specification defense as a matter of law. In light of this determination, we need not reach or decide the merits of the alternative defenses advanced in the trial court and on appeal. The judgments in favor of Defendants Montgomery, Art and Metro are affirmed.

CRANE, P.J., and KAROHL, J., concur.

---

**3.** In any event, the evidence submitted to the trial court established that, at the time of acceptance, Lever Brothers was fully aware that the cyclones had none of the safety features Plaintiffs contend should have been incorporated. Further, Plaintiffs failed to submit any evidence suggesting that Defendants had any reason to believe the cyclones would ever be filled with water. As discussed above, the cleaning procedure adopted by Lever Brothers did not contemplate filling the cyclones with water. According to Lever Brothers' engineer, the design contemplated that water used to flush detergent from the sides would flow naturally from the bottom of the cyclone. Inasmuch as Plaintiffs have not provided any evidence that water was expected or intended to accumulate and rise above the level of the access doors, let alone that Defendants would have any reason to anticipate such an occurrence, it is difficult to conceive how Defendants could have had any duty to warn Plaintiffs of what would happen if fluid levels rose above the access doors.