Joyce **FISHER**, et al., Appellants,

v.

**STATE HIGHWAY COMMISSION OF MISSOURI**, et al., Respondents.

No. 79284.

Supreme Court of Missouri,
En Banc.

June 17, 1997.

Rehearing Denied Aug. 19, 1997.

Donald L. Schlapprizzi, Jason C. Pulos, Albert Lebowitz, St. Louis, for appellants.

Zachary T. Cartwright, Rich Tiemeyer, Jefferson City, T. Michael Ward, Donald L. James, John P. Rahoy, Eugene K. Buckley, St. Louis, for respondents.

Jeremiah W. (Jay) Nixon, Attorney General, Robert L. Presson, Assistant Attorney General, Jefferson City, for intervenor.

BENTON, Judge.

On June 11, 1989, Joyce Fisher was riding her motorcycle on Highway 270 in St. Louis County. On the bridge over St. Charles Rock Road, her motorcycle tires became trapped in a groove left by the deterioration of the seal in an expansion joint. She lost control of the motorcycle and suffered serious permanent injuries.

Fisher sued the State Highway Commission of Missouri, contractor Millstone Construction Company, and subcontractor Ironmaster Corporation, for negligence and strict liability. Richard Fisher, her husband, sued for loss of consortium. Before trial, the circuit court sustained motions for summary judgment by Millstone and Ironmaster, leaving the Commission as the sole defendant.

The jury assessed fault 90 percent to the Commission and 10 percent to Fisher. The jury returned $2,500,000 on the claim of Joyce Fisher and $500,000 on the consortium claim of Richard Fisher. On both claims, the trial court limited judgment to a total of $100,000 pursuant to section 537.610.[1] Because the validity of a statute is at issue, this Court has jurisdiction. *Mo. Const. art. V., sec. 3.* Affirmed.

### I. Constitutional Issues

The Fishers raise several constitutional challenges to the validity of section 537.610. This Court held in *Richardson v. State Highway and Transportation Commission,* 863 S.W.2d 876, 879–80 (Mo. banc 1993), that section 537.610 does not violate equal protection, due process of law, or the right of trial by jury under the Fourteenth Amendment to the United States Constitution and under article I, sections 2, 10, and 22(a) of the Missouri Constitution. The Fishers here invoke other provisions of the Missouri Constitution.

### A. Enjoyment of the Gains of Their Own Industry

The Fishers claim that capping their damages at $100,000 violates their right under article I, section 2 of the Missouri Constitution: "... that all persons have a natural

right to life, liberty, the pursuit of happiness and the enjoyment of the gains of their own industry...."

The Missouri Constitution of 1820 did not reference "the enjoyment of the gains of their own industry." This phrase first appeared in the Declaration of Rights of the Missouri Constitution of 1865 as "the enjoyment of the fruits of their own labor." *Mo. Const. of 1865, art. I, sec. 1.* Although the 1875 Constitution modified the wording to "the enjoyment of the gains of their own industry," this was not a change in substance. 2 *Debates of the Missouri Constitutional Convention of 1875,* at 7 (Isidor Loeb & Floyd C. Shoemaker, eds., 1932); *Mo. Const. of 1875, art. II, sec. 4.* The language in the 1875 Constitution continued unchanged in the 1945 Constitution. 5 *Debates of the Missouri Constitutional Convention 1945,* at 1423 (1944).

Charles D. Drake, the author of the Constitution of 1865, studied the constitutions of other states, particularly the Maryland Constitution of 1864. David D. March, *Charles D. Drake and the Constitutional Convention of 1865,* 47 Mo. HIST. REV. 110, 112 (1953), *citing* Charles D. Drake, *Autobiography of Charles D. Drake* 1054–55 (date unknown) (unpublished manuscript, on file with Western Historical Manuscript Collection, Columbia, Missouri). In fact, the language in the Missouri and Maryland constitutions is practically identical. *Compare Mo. Const. of 1865, art. I, sec. 1* ("the enjoyment of the fruits of their own labor") *with Md. Const. of 1864, art. 1* ("the enjoyment of the proceeds of their own labor"). This provision was intended to apply to the condition of the slaves recently freed. Edward Otis Hinkley, *The Constitution of the State of Maryland* 121 (John Murphy & Co. 1867). The voters who approved the 1865 Constitution would have understood the provision on "fruits of their own labor" to apply to the recently freed slaves. No other provision in the 1945 Missouri Constitution expressly prohibits slavery or involuntary servitude. *See 1 Journal of the Constitutional Convention of*

---

1. All statutory references are to RSMo 1994.

*Missouri 1943–1944*, at 13–14 (82d day, Feb. 14, 1944).

The origin of the "enjoyment of the gains of their own industry" phrase is in workplace slavery. Equally, the cases of this Court discussing this phrase concern labor, occupations, professions, and the marketplace. *See Appendix A.* Only three times has this Court invoked this phrase to invalidate a law: twice when government forced individuals to work without compensation, *State ex rel. Scott v. Roper,* 688 S.W.2d 757, 768–69 (Mo. banc 1985); *Moler v. Whisman,* 243 Mo. 571, 147 S.W. 985, 987–88 (1912); and once when the state prevented individuals from selling a lawful product, *State ex rel. Knese v. Kinsey,* 314 Mo. 80, 282 S.W.2d 437, 439 (1926). *Cf. Baue v. Embalmers Federal Labor Union No. 21301,* 376 S.W.2d 230, 234–35 (Mo. banc 1964)(picketing of funeral home for purpose of preventing owner-partners from embalming in their own establishment, held against public policy in article I, section 2).

■ Clearly, this constitutional provision does not negate sovereign immunity. Sovereign immunity existed when Missouri joined the Union. *Findley v. City of Kansas City,* 782 S.W.2d 393, 395 (Mo. banc 1990). Sovereign immunity was recognized in Missouri before the "enjoyment of gains" phrase was added to the Missouri Constitution in 1865, and sovereign immunity prevailed when the Missouri constitutions of 1865, 1875 and 1945 were adopted. When approving Missouri's constitutions, the citizens could never have thought that "the enjoyment of the gains of their own industry" provision abrogated sovereign immunity. Equally, "the enjoyment of gains" phrase has no relevance to a partial waiver of sovereign immunity. Section 537.610 does not violate article I, section 2 of the Missouri Constitution. Semble, *Schumann v. Missouri Hwy & Transp. Comm'n,* 912 S.W.2d 548, 551–52 (Mo.App.1995).

### B. Equal Protection

The Fishers assert that section 537.610 violates another part of article I, section 2 of the Missouri Constitution: " . . . that all persons are created equal and are entitled to equal rights and opportunity under the law . . . ." The Fishers contend that imposing a $100,000 cap only on certain tort claims denies them equal rights under the law.

■ Under the Missouri equal protection clause, a classification survives if rationally related to a legitimate state interest. *Asher v. Lombardi,* 877 S.W.2d 628, 630 (Mo. banc 1994). This traditional test does not apply if the statute burdens a suspect class or impinges a fundamental right. *Id.* "A statute that neither touches a fundamental right nor involves a suspect classification will withstand an equal protection challenge if a rational basis for the legislative classification can be found." *Richardson,* 863 S.W.2d at 879.

■ The Fishers do not reference a suspect class. Victims of government negligence are not members of a suspect class. *See Batek v. Curators of University of Missouri,* 920 S.W.2d 895, 898 (Mo. banc 1996).

The Fishers, however, attempt to reference a fundamental right under the Missouri Constitution to "the enjoyment of the gains of their own industry." *Richardson* does not control, according to the Fishers, because the Richardsons did not reference a fundamental right. *Richardson,* 863 S.W.2d at 879. The issue is whether, on these facts, the term "the enjoyment of the gains of their own industry" creates a fundamental right under the equal protection clause of the Missouri Constitution.

■ As outlined above, this constitutional provision applies only to conditions in the marketplace. Further, this Court implicitly rejected a fundamental rights argument in holding that the legislature's readoption of sovereign immunity, and limited waiver of immunity, did not violate equal protection under either the United States or Missouri Constitutions. *See Winston v. Reorganized School District R–2,* 636 S.W.2d 324, 329 (Mo. banc 1982), citing *sec. 537.600* and *sec. 537.610.* Strict scrutiny is thus not required, and the statute will be upheld if it is rationally related to a legitimate state interest.

"The General Assembly has a rational basis to fear that full monetary responsibility for tort claims entails the risk of insolvency or intolerable tax burdens. Restricting the

amount recoverable—like limiting recovery to certain enumerated torts—allows for fiscal planning consonant with orderly stewardship of governmental funds, while permitting some victims to recover something." *Richardson*, 863 S.W.2d at 879. Section 537.610 does not violate the equal protection clause of the Missouri Constitution.

### C. Uniformity of Taxation

■ The Fishers also argue that imposing a cap on damages violates the principle of uniform taxation, citing article IV, section 30(b) of the Missouri Constitution. The Fishers did not raise this point below. A constitutional question is waived unless raised in the trial court at the earliest opportunity. *Crittenton v. Reed*, 932 S.W.2d 403, 406 (Mo. banc 1996). This Court need not address the uniform taxation issue.

### D. Open Courts and Certain Remedy

The Fishers assert that section 537.610 violates their fundamental right of access to the courts and to a certain remedy under article I, section 14 of the Missouri Constitution.

■ "This Court has distinguished between statutes that impose procedural bars to access, and statutes that change the common law by the elimination (or limitation of) a cause of action." *Adams*, 832 S.W.2d at 905. The former are not permitted; the latter are a valid exercise of a legislative prerogative. *Id.* "The constitutional right of access means simply the right to pursue in the courts the causes of action the substantive law recognizes." *Wheeler v. Briggs*, 941 S.W.2d 512, 514 (Mo. banc 1997).

■ Here, section 537.610 does not bar access. At common law, there was no right to sue the State for tort damages. The legislature can create a cause of action, but limit it. *See Findley*, 782 S.W.2d at 396. Section 537.610 limits a cause of action by capping damages for tort claims against the State, and does not violate article I, section 14.

### II. Claim Against Millstone

The Fishers contend that the trial court erred in granting summary judgment for Millstone. This Court reviews the record in the light most favorable to the party against whom summary judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Review is essentially de novo, and the propriety of summary judgment is purely an issue of law. *Id.* Summary judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Rule 74.04(c); Krause v. U.S. Truck Co.*, 787 S.W.2d 708, 709 (Mo. banc 1990).

Millstone was the general contractor for the bridge project. The Commission provided all specifications, plans, and drawings for the project. The Commission accepted the project when completed. The trial court granted summary judgment based on the acceptance doctrine, which relieves contractors of liability to those not parties to the contract after the owner accepts the contractor's work. *Gast v. Shell Oil Co.*, 819 S.W.2d 367, 370 (Mo. banc 1991).

■ The Fishers concede that the work was accepted by the Commission and that this would normally preclude recovery. However, they invoke the exception that a contractor is liable for a defect essentially and imminently dangerous to others that is so hidden and concealed that a reasonably careful inspection would not disclose it, and which was known to the contractor but not the owner. *Id.*, citing *Begley v. Adaber Realty and Inv. Co.*, 358 S.W.2d 785, 791 (Mo. 1962).

Here, there was no such defect. Millstone filled the gap in the expansion joint with a sealant, as directed by the Commission. The expansion joint only became dangerous years later after the Commission failed to maintain the sealant. The defect was not hidden or concealed, as demonstrated by the communications between Millstone and the Commission. The exception does not apply in this case.

The Fishers also claim genuine issues of material fact as to (1) whether Millstone

complied with the specifications, and (2) whether the specifications were so obviously bad that a competent contractor would recognize a grave chance that its product would be dangerously unsafe. *See Bloemer v. Art Welding Co.*, 884 S.W.2d 55, 59 (Mo.App. 1994).

The record contains nothing to support the Fishers. The undisputed fact that the Commission accepted the project shows that Millstone complied with the specifications. The Fishers' damages were not caused by obviously bad specifications, but by the Commission's failure to maintain or replace the sealant.

The Fishers have not established any disputed issues of material fact with respect to Millstone. Accordingly, the circuit court did not err in granting summary judgment.

### III. Claim Against Ironmaster

The Fishers assert that the trial court erred in granting summary judgment to Ironmaster. Ironmaster, a subcontractor, provided engineering, construction, and fabrication services on the expansion joint. The Fishers contend that the acceptance doctrine does not apply to Ironmaster because it is a manufacturer's representative, not a contractor or fabricator.

The acceptance doctrine extends to "chattels custom manufactured and installed in accordance with the customer's plans and specifications." *Bloemer*, 884 S.W.2d at 59. Here, the record establishes that Ironmaster prepared shop drawings from the Commission's plans and specifications before Ironmaster fabricated the joint. Ironmaster cut the expansion joint, welded anchors to it, placed welds at specifically determined locations, sandblasted, and painted the joint, all according to specifications. Ironmaster supervised the installation by Millstone of the joint, which was accepted by the Commission.

The expansion joint was a chattel, custom-manufactured and installed according to the plans and specifications of the Commission. The acceptance doctrine applies to Ironmaster. The trial court did not err in granting summary judgment.

### IV.

The judgment of the circuit court is affirmed.

LIMBAUGH, ROBERTSON, COVINGTON and WHITE, JJ., concur.

HOLSTEIN, C.J., concurs in part and dissents in part in separate opinion filed.

PRICE, J., concurs in opinion of HOLSTEIN, C.J.

### APPENDIX A

*State ex rel. Scott v. Roper*, 688 S.W.2d 757, 768–69 [4, 5] (Mo. banc 1985); *In Interest of J.Y.*, 637 S.W.2d 670, 671, 673[7] (Mo. banc 1982); *State v. Newlon*, 627 S.W.2d 606, 612–13[5] (Mo. banc), *cert. denied*, 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982); *State ex rel. Maryland Heights Concrete Contractors, Inc. v. Ferriss*, 588 S.W.2d 489, 490–91[2] (Mo. banc 1979); *Independent Stave Co., Inc. v. Higdon*, 572 S.W.2d 424, 428–29 [4, 5] (Mo. banc 1978); *State ex rel. Lipps v. City of Cape Girardeau*, 507 S.W.2d 376, 380–81 [4, 5, 6] (Mo.1974); *Baue v. Embalmers Federal Labor Union No. 21301*, 376 S.W.2d 230, 234–35 [3, 4] (Mo. banc 1964); *Riden v. City of Rolla*, 348 S.W.2d 946, 948, 950 [1, 5] (Mo.1961); *ABC Liquidators, Inc. v. Kansas City*, 322 S.W.2d 876, 882, 884 [5, 13] (Mo.1959); *Ingle v. City of Fulton*, 260 S.W.2d 666, 667–68[2] (Mo.1953); *King v. Priest*, 357 Mo. 68, 206 S.W.2d 547, 557[13] (1947); *State v. Lawson*, 352 Mo. 1168, 181 S.W.2d 508, 512 [4, 5, 6] (1944); *Zinn v. City of Steelville*, 351 Mo. 413, 173 S.W.2d 398, 400–01 [1, 2] (1943); *Hammett v. Kansas City*, 351 Mo. 192, 173 S.W.2d 70, 73[3] (1943); *Ex Parte Williams*, 345 Mo. 1121, 139 S.W.2d 485, 487–88[1] (1940); *Poole & Creber Market Co. v. Breshears*, 343 Mo. 1133, 125 S.W.2d 23, 27–28 [2, 3] (1938); *Moyer v. Orek Coal Co.*, 78 S.W.2d 107, 107–08[2] (Mo.1934); *State ex rel. Becker v. Wellston Sewer Dist.*, 332 Mo. 547, 58 S.W.2d 988, 992[7] (1933); *Mellon v. Stockton & Lampkin*, 326 Mo. 129, 30 S.W.2d 974, 975[3] (1930); *State ex rel. Knese v. Kinsey*, 314 Mo. 80, 282 S.W. 437, 439[5] (1926); *Kusnetzky v. Security Ins. Co.*, 313 Mo. 143, 281 S.W.

47, 51–52 [5, 6] (1926); *Cheek v. Prudential Ins. Co.*, 192 S.W. 387, 393[8] (Mo.1916); *Heller v. Lutz*, 254 Mo. 704, 164 S.W. 123, 125–27 [4, 6] (1913); *Moler v. Whisman*, 243 Mo. 571, 147 S.W. 985, 987–88 [5, 9] (1912); *State v. Missouri Pac. R. Co.*, 242 Mo. 338, 147 S.W. 118, 122–25 [10, 11] (1912); *Ex parte Smith*, 231 Mo. 111, 132 S.W. 607, 609[3] (1910); *City of St. Louis v. Liessing*, 190 Mo. 464, 89 S.W. 611, 613[1] (1905); *Allen v. Labsap*, 188 Mo. 692, 87 S.W. 926, 928–29[4] (1905); *State v. Missouri Tie & Timber Co.*, 181 Mo. 536, 80 S.W. 933, 939 (1904); *City of St. Louis v. Galt*, 179 Mo. 8, 77 S.W. 876, 878[2] (1903); *City of St. Louis v. McCann*, 157 Mo. 301, 57 S.W. 1016, 1017[1] (1900); *City of St. Louis v. F. Meyrose Lamp–Manuf'g Co.*, 139 Mo. 560, 41 S.W. 244, 245–46 (1897); *Daggs v. Orient Ins. Co.*, 136 Mo. 382, 38 S.W. 85, 88 [4, 5] (1896); *State v, Julow*, 129 Mo. 163, 31 S.W. 781, 782–83 (1895); *State v. Loomis*, 115 Mo. 307, 22 S.W. 350, 351–53 (1893); *Henry & Coatsworth Co. v. Evans*, 97 Mo. 47, 10 S.W. 868, 872–73[3] (1889); *State v. Addington*, 77 Mo. 110, *aff'g* 12 Mo.App. 214, 217–18 (1882).

HOLSTEIN, Chief Justice, dissenting in part and concurring in part.

The majority fails to mention the full range of rights protected by the Missouri Constitution, article I, sec. 2. It provides: "[T]hat all persons have a natural right to life, liberty, the pursuit of happiness and the enjoyment of the gains of their own industry." Taken together, these provisions give persons in this state a fundamental right to lawfully acquire, hold, enjoy and dispose of property. *Stone v. City of Jefferson*, 317 Mo. 1, 293 S.W. 780, 782 (1927). A necessary adjunct of that right is the right to pursue any lawful business, calling, or profession. Indeed, a citizen's right to pursue a business, calling, or profession is both a liberty and property right to be guarded as zealously as any other fundamental right. *Greene v. McElroy*, 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959); *Downey v. United Weatherproofing*, 363 Mo. 852, 253 S.W.2d 976, 982 (1953). In an analogous situation, this Court has held that the negligent construction of a highway so as to flood a farmer's land was a taking of property for which the State was obliged to pay just compensation. *Heins Implement Co. v. Mo. Highway & Transp. Comm'n*, 859 S.W.2d 681 (Mo.banc 1993). Given these principles, it necessarily follows that the negligent taking by the State of one's fundamental, constitutionally protected liberty and property right to engage in lawful employment is prohibited absent payment of just compensation or other due process of law.

Even the principal opinion's narrow view of Missouri Constitution article I, sec. 2, proves too much. As I understand the opinion, it holds that the right to "the enjoyment of the gains of [one's] own industry" only prohibits involuntary servitude or interfering with a person's right to keep or dispose of property acquired through employment. Accepting that as true, I believe the State's imposition of a disabling injury upon a plaintiff is a form of compulsory servitude from which the plaintiff cannot escape. Moreover, plaintiff will be deprived of previously acquired earnings and whatever meager income she may now be capable of producing by being forced to pay medical and rehabilitation expenses thrust upon her by the culpable conduct of the State's agents. She is thereby deprived by the State of the right to enjoy the gains of her own industry.

It is possible the State may limit its liability. In this case, plaintiff seeks only economic damages in excess of that authorized by sec. 537.610. Just compensation and due process require at least the payment of plaintiff's actual economic loss attributable to the State or its agents.

As noted in my separate opinion in *Richardson v. State Highway & Transportation Commission*, 863 S.W.2d 876, 882–84 (Mo. banc 1993)(Holstein, J., concurring in result), the doctrine of sovereign immunity is of questionable common law origin and is not supported by sound reason. When the doctrine comes into direct conflict with fundamental constitutional rights, it is the doctrine that should give way, not the constitution.

For the above reasons, I respectfully dissent as to Part I. I concur in Parts II and III of the principal opinion.